[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 125.]

THE STATE EX REL. ABEX CORPORATION, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Abex Corp. v. Indus. Comm.*, 1995-Ohio-161.]

*Workers' compensation—Approval by Industrial Commission of treatment provided claimant—Cause returned to commission when there is legitimate question whether all relevant evidence had been considered.*

(No. 94-952—Submitted October 10, 1995—Decided November 29, 1995.)

APPEAL from the Court of Appeals for Franklin County, No. 93AP-140.

————————————

{¶ 1} Appellee-claimant, Dewey B. Akers, was injured in the course of and arising from his employment with appellant, Abex Corporation. His workers' compensation claim was later allowed for "lumbosacral strain; thoracic myositis; dysthymic disorder." In 1988, claimant filed a motion with appellee Industrial Commission of Ohio for permanent total disability compensation, which prompted a referral to the commission's rehabilitation division. Subsequently, a case closure memo by the commission's legal section stated:

"Case was referred to MDAV (Medical Advisor and Pharmacist) for evaluation of appropriateness and effectiveness of Mr. Akers' medications."

{¶ 2} On April 13, 1990, Dr. Jon E. Starr, the commission's chief medical advisor, wrote to Abex:

"The Bureau of Workers' Compensation Rehabilitation Division in their assessment of the above patient has forwarded concerns to my office relative to potentially excessive/inappropriate prescribing and/or treatment patterns that appear to be having an adverse impact on this patient's successful rehabilitation and recovery.

"This information is being forwarded for your action as deemed appropriate."

**{¶ 3}** His letter caused Abex to file a motion with the commission:

"That this claim file be referred to the Medical Section on an EXPEDITED basis for a peer review on the appropriateness of prescribing and/or treatment patterns and that this matter be set for hearing or referred for further appropriate action based upon the report of the Medical Section." (Emphasis *sic*.)

**{¶ 4}** The motion was accompanied by the letter of Dr. Starr.

**{¶ 5}** In the month that followed, claimant obtained several letters from attending psychiatrist, Dr. John W. Leist, defending the course of psychiatric treatment. The record contains nothing from Dr. Richard F. Stahr, who was treating claimant's allowed physical conditions.

**{¶ 6}** On November 19, 1990, commission physician Dr. Kathryn Drew performed a medical review and concluded:

"Addicting medications are not appropriate for treating a chronic benign pain condition. This includes Tylenol # 3, Halcion, Restoril, and Valium * * *. These drugs may cause depression, memory problems, sleep disturbances, and an increased perception of pain when used on a long-term basis. Anxiety and muscle spasm may be features of withdrawal from these drugs, providing a self-perpetuating 'need' for them. Tolerance develops to the analgesic and anti-anxiety effects, rendering them ineffective except for relieving withdrawal symptoms. These medications should be tapered and discontinued over one or two months, and further payment should not be made for them, or for any other addicting drugs.

"In reviewing Dr. Stahr's office records, I can find no evidence that the office visits serve any purpose other than renewal of medications, most of which should not be continued. The exception would be anti-depressants (such as Elavil) which are appropriate for treating both depression and chronic pain, but may be more effective when 'depressant' drugs are stopped. The frequency of office visits

for management of this chronic stable condition should be no more than one every three months.

"Weekly psychotherapeutic sessions have not been beneficial. Dr. Leist has not provided the requested records from these visits. Summary letters only were received. Payment should not be made further to Dr. Leist, as he has not provided proper documentation of the medical services provided. He argues in his summary letters that the patient will deteriorate to a 'primitive level' without psychotherapy, but there is no medical evidence to suggest that this would happen. After 115 sessions (March 1990) Dr. Leist's description of the claimant's dysthymic disorder shows no improvement, and he states that the claimant is not capable of recovering from the depression. His apparent goal is to keep the claimant functioning in a minimal way rather than to encourage the claimant to increase his level of function. Dr. Leist apparently does not believe that depression and somatic over-concern contribute to chronic pain syndrome, and simply accepts that his patient must remain depressed and have a limited lifestyle because of physical pain. In light of this view, weekly psychotherapy makes no sense. Why Dr. Leist feels his intervention prevents deterioration to a primitive state is a mystery, but hopefully his office notes will provide the answer. These notes again are being requested. If they are not provided, then there will be no evidence of past services, and past payments will be in question."

{¶ 7} Some seven weeks later, Dr. Jon Starr wrote:

"*If* I and the employer are forced to draw conclusions solely on the evidence you are presently willing to release for this requested review and hearing, then the following conclusions and opinions are clear and inevitable:

"1. There is *no* evidence *ON FILE* to suggest (other than Dr. Leist's personal and inherently biased 'opinion') that the patient has derived *ANY* benefit from the protracted and repetitive 'treatment' provided by him. On the contrary

"2. if one is to accept the opinions and conclusions submitted to the file by Dr. Leist then one can only conclude that the patient's condition has substantially worsened during his 'intensive' intervention, which might lead one to the alternative conclusion that the treatment has contributed to the patient's deterioration.

"3. The same conclusions apply to the medical documentation provided by Dr. Stahr. In fact those records suggest a significant failure of the use of acceptable methods in the treatment of this patient. In particular the continued prescribing of central nervous system depressants and the 'palliative' treatment documented cannot but have had an adverse impact on the patient's perception of the severity of his disability.

"4. The repeated refusal to submit the records of office visits by Dr. Leist and his deferral to legal barriers rather than any contact with this office raises the question as to whether those actions have occurred to protect the patient's or physician's legal right[s] or whether such records (or visits) exist, or if such exist whether those records document services for other than the industrial claim.

"None of the above scenarios can be used to support the contention that further reimbursement for such services as has been rendered to date should continue."

{¶ 8} Dr. Drew concurred.

{¶ 9} On November 18, 1991, a district hearing officer authorized past payment, but sharply curtailed further treatment. This prompted both parties to appeal. On March 24, 1992, the regional board of review determined:

"* * * [T]he District Hearing Officer's Order of November 3 [*sic*], 1991 is hereby reversed. The Employer's Motion for a peer review is denied as the motion was not supported by medical or other evidence.

"The Board also finds that the reports of Dr. John W. Leist and Dr. Richard F. Stahr support the treatment being provided and as such the self-insured employer

is hereby ordered to pay all past medical, pharmaceutical, and doctor bills for the allowed conditions, in accordance with the rules and regulations of the Bureau of Workers' Compensation and Industrial Commission."

{¶ 10} Staff hearing officers affirmed without comment.

{¶ 11} Abex filed a complaint in mandamus in the Court of Appeals for Franklin County claiming that the commission abused its discretion in approving treatment. The court of appeals disagreed and denied the writ.

{¶ 12} This cause is now before this court upon an appeal as of right.

_____

*Porter, Wright, Morris & Arthur*, *Darrell R Shepard* and *Christopher C. Russell*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Yolanda L. Barnes*, Assistant Attorney General, for appellee Industrial Commission.

*Livorno & Arnett* and *John F. Livorno*, for appellee Akers.

_____

***Per Curiam.***

{¶ 13} The disputed order states:

"* * * The Employer's Motion for a peer review is denied as the motion *was not supported by medical or other evidence*.

"The Board also finds that the reports of Doctor John W. Leist and Dr. Richard F. Stahr support the treatment being provided * * *."

{¶ 14} The emphasized language can be interpreted one of two ways. It can be read as saying that Abex presented no evidence on behalf of its motion. Conversely, the order can be viewed as finding that Abex did submit evidence, but that upon review it was found not to be probative.

{¶ 15} Resolution turns on which interpretation is correct. If it is the former, the board erred. The reports of Drs. Drew and Starr were asserted and argued on Abex's behalf. If the second interpretation is adopted, the order must be

upheld. Evidentiary weight and credibility are the commission's province. *State ex rel. Burley v. Coil Packing, Inc*. (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E. 2d 936.

{¶ 16} Where an order is capable of two or more equally valid interpretations, a reviewing court generally should not speculate as to what the commission meant. Instead, "[a]n order of the Industrial Commission which is not sufficiently specific for the Supreme Court to review without searching the record will be remanded to the commission for clarification." *State ex rel. Gen. Motors Corp. v. Indus. Comm*. (1988), 35 Ohio St.3d 105, 518 N.E. 2d 1194, paragraph two of the syllabus.

{¶ 17} Moreover, where there is a legitimate question as to whether all relevant evidence has been considered, the cause should be returned for clarification and amended order. *State ex rel. Fultz v. Indus. Comm.* (1994), 69 Ohio St.3d 327, 631 N.E. 2d 1057. In this case, the possibility that the board erroneously believed that Abex submitted no evidence raises a legitimate question as to the board's awareness of the Starr and Drew reports.

{¶ 18} Accordingly, the judgment of the court of appeals is reversed, and the cause returned to the commission for further consideration and amended order.

*Judgment reversed*

*and cause remanded.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., CONCUR.

————————————