THE STATE, EX REL. MILBURN, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLANTS.

[Cite as State, ex rel. Milburn, *v.* Indus. Comm. (1986), 26 Ohio St. 3d 119.]

(No. 85-1623—Decided August 20, 1986.)

*R. E. Goforth Co., L.P.A.,* and *James P. Proctor,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, *Gerald H. Waterman* and *Merl H. Wayman,* for appellants Industrial Commission and Administrator.

*Day, Ketterer, Raley, Wright & Rybolt, John F. Buchman* and *Stephen A. Reilly,* for appellant Whitacre-Greer Fireproofing Co.

*Per Curiam.* The law of Ohio is settled that the determination of disputed facts is particularly, and finally, within the jurisdiction of the Industrial Commission. See, *e.g., State, ex rel. Hudson,* v. *Indus. Comm.* (1984), 12 Ohio St. 3d 169; *State, ex rel. Kokocinski,* v. *Indus. Comm.* (1984), 11 Ohio St. 3d 186; *State, ex rel. Allerton,* v. *Indus. Comm.* (1982), 69 Ohio St. 2d 396 [23 O.O.3d 358]; and *State, ex rel. Haines,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 15 [58 O.O.2d 70].

Our well-settled standard of review is that the commission will be fully upheld where its determination is found to be supported by *some* evidence. See, *e.g., Hudson, supra; Kokocinski, supra; State, ex rel. G F Business Equip., Inc.,* v. *Indus. Comm.* (1981), 66 Ohio St. 2d 446 [20 O.O.3d 379]; *State, ex rel. Dodson,* v. *Indus. Comm.* (1980), 62 Ohio St. 2d 408 [16 O.O.3d 439]; *State, ex rel. Humble,* v. *Mark Concepts, Inc.* (1979), 60 Ohio St. 2d 77 [14 O.O.3d 275]; and *State, ex rel. Kramer,* v. *Indus. Comm.* (1979), 59 Ohio St. 2d 39 [13 O.O.3d 30].

In the case before us, the commission announced particular reliance upon the reports of Drs. D. M. Ceramella, Emmanuel J. Casiano, and William G. Kraus. Dr. Casiano was appellee's treating physician and Dr. Ceramella also filed on appellee's behalf. At the request of the commission, appellee was examined by Dr. Kraus, who submitted a quite extensive report. During the course of therapy, appellee has had his wrist examined by many other doctors, including Drs. Charles J. Paquelet and Joseph J. Leven, whose reports are likewise contained within the file.

Dr. Leven, on March 13, 1981, concluded that appellee had temporary partial impairment of low moderate degree which ought to end within four months. Dr. Paquelet stated, on September 18, 1981, that appellee had a "perfectly normal appearing forearm and hand. * * * He makes a fist, fully extends the fingers. Wrist motion is normal. The grip is poor. * * * He shows by examination a * * * full range of normal motion of the wrist, fingers and thumb. Radiograms are normal."

Dr. Casiano observed swelling of the right forearm. He estimated, however, that the impairment was temporary and that appellee could resume light work at his occupation by December 3, 1981. On November 9, 1981 he changed his estimate to February 9, 1982, and observed no change in condition. The "no change" report was reiterated on November 29, 1982, but the doctor concluded that appellee could resume work within two months.

Finally, Dr. Kraus examined appellee on December 27, 1982. He concluded:

"On the basis of the essentially negative physical examination as well as the negative X-ray examination and the absence of objective physical findings except for the presence of * * * Minimal Swelling * * * as well as a full range of active and passive motion of the right forearm, wrist and hand with minimal pain, I am forced to conclude that this claimant has made a good recovery from the allowed injury * * *.

"Based upon my physical and X-ray findings, I would conclude that this individual is capable of returning to his former employment * * *. In spite of the fact that he continues to complain of some mild discomfort, I do not believe this should prevent him from performing such activity. Therefore, I conclude that * * * this claimant was not temporarily and totally disabled. Based upon my physical findings, his complaints and the X-ray findings, it is my conclusion that this claimant has a low degree of temporary partial disability * * *."

It is evident that all of the examining physicians felt that appellee should be able to return to work to perform a lighter than usual workload in his profession. Although Dr. Casiano, appellee's own treating physician, continued to move ahead his estimation of such return, he too agreed with this prognosis. Further, it is abundantly clear that, despite appellee's claims of mild subjective discomfort, Dr. Kraus' very thorough analysis of the physical indicia fully sufficed to support his conclusion that appellee's disability was so small that it should not inhibit his return to work at his same job. Consequently, we find Dr. Kraus' report as well as particular observations of Drs. Casiano, Paquelet and Leven to substantiate the determination by the commission that appellee was no longer temporarily and totally disabled and that compensation for same should end.

Appellee also asserts that because Dr. Kraus was not appellee's attending physician, appellee is entitled to temporary total disability compensation until such treating physician has made a written statement that appellee is capable of returning to his former position of employment, citing *State, ex rel. Ramirez,* v. *Indus. Comm.* (1982), 69 Ohio St. 2d 630, 632 [23 O.O.3d 518]. It should be noted that while Dr. Kraus was not appellee's personal physician, he was an examining physician whose conclusions are as fully expert as those of the personal physician. Moreover, R.C. 4123.56 provides: "* * * If the [self-insured] employer disputes the attending physician's report, payments may be terminated only upon application and hearing by a district hearing officer. * * *" This statute provides that the attending physician's findings may be disputed so as to terminate payments. Such dispute would normally be founded in a medical opinion contrary to that of the attending physician and obviously made by another doctor. It is not reasonable, therefore, that an attending physician have the absolute power to determine, alone, whether appellee has recovered. It logically follows, as well, that a hearing officer need not give greater weight to a medical report solely because it is made by the attending physician, but may give the report such weight as he deems appropriate.

Having found some relevant evidence to support the findings of the commission, we accordingly reverse the judgment of the court of appeals and deny the writ.

*Judgment reversed*
*and writ denied.*

LOCHER, HOLMES and WRIGHT, JJ., concur.

DOUGLAS, J., concurs separately in judgment with opinion.

CELEBREZZE, C.J., SWEENEY and BROWN, JJ., dissent.

WRIGHT, J., concurring. I concur in the lead opinion and would also like to respond to the concerns expressed by my brethren in dissent. I am

confident that every member of this court accepts the premise that the Workers' Compensation Act should be interpreted in a liberal manner. I agree that the commission should continue to give the Act generous application on behalf of injured members of our work force.

Today, in a series of cases, we have reaffirmed the essential function of the commission as the body that should determine the nature and extent of any particular claimant's disability. We as a court should not interfere with the commission's fact-finding function where there is relevant evidence to support the commission's findings. This business of generating irrational and artificial tests that cause the rejection of competent expert testimony simply makes no common sense. The idea that medical evidence must be ignored unless the medical expert expresses an opinion about each and every facet of a claimant's emotional and physical conditions flies in the face of over three centuries of Anglo-American jurisprudence in which the trier of fact has the authority to evaluate the evidence. Thus, I cannot share the disquiet of the minority. Instead I feel our result is consistent with sound jurisprudence.

DOUGLAS, J., concurring. For the reasons stated, where herein pertinent, in my concurring opinion in *State, ex rel. Rouch,* v. *Eagle Tool & Machine Co.* (1986), 26 Ohio St. 3d 197, 201-217, I concur in the judgment of the court.

CELEBREZZE, C.J., dissenting. I am in complete agreement with Justice Brown's observations that the reports of Drs. Casiano, Ceramella and Kraus do not constitute probative evidence on which the Industrial Commission could rely in denying appellee Milburn's claim for temporary total disability benefits for the period beginning February 9, 1982.

I am particularly disturbed by the plurality's reliance on, *inter alia,* the reports of Drs. Leven and Paquelet as supporting the commission's order.

The plurality's construction of its "some evidence rule" is, in my view, an unsatisfactory standard of dubious validity. See *State, ex rel. Smith,* v. *Indus. Comm.* (1986), 26 Ohio St. 3d 128, 130-134. (Celebrezze, C.J., concurring in part and dissenting in part.) The plurality's use of the reports of Drs. Leven and Paquelet in the instant case illustrates the potential for abuse of this "some evidence" rule.

The commission's district hearing officer, in his 1983 order denying appellee temporary total disability benefits, stated that the order was "[b]ased on the medical reports of Drs. Kraus, Casiano and Ceramella." Apparently realizing that those reports offer only weak (at best) evidence in support of that order, the plurality has dredged up two old reports of Drs. Leven and Paquelet, predating the period of claimed disability, which it considers as "some evidence" in support of the commission's order.

Dr. Leven examined appellee on March 13, 1981. His report on appellee's condition at that time is of highly questionable relevance in deter-

mining appellee's eligibility for temporary total compensation for a period beginning nearly one year later.

The doctor opined that appellee was suffering a "[t]emporary [p]artial" impairment, yet the commission's district hearing officer subsequently found Dr. Leven's evaluation unpersuasive. In April 1981, the commission awarded appellee temporary total disability benefits through May 1981 after expressly considering Dr. Leven's report. If the commission itself previously found this report unconvincing in 1981, how can the plurality now rely on it to deny appellee temporary total compensation from February 9, 1982?

This sad scenario is repeated with the plurality's embrace of the report of Dr. Paquelet, who examined appellee in September 1981. The reliability, relevance and probative value of this medical report is also suspect. The plurality glosses over Dr. Paquelet's medical finding that appellee's "grip is poor." Yet surely this is a critical observation regarding a man whose job entailed lifting and handling up to 64,000 pounds of bricks per day. Dr. Paquelet's report also characterized appellee as a man who "continues with disabling wrist pain," a statement conveniently omitted from the plurality's recount. Indeed, the Industrial Commission evidently had far more doubts about the value of Dr. Paquelet's report than did today's plurality, since the commission expressly considered the report's medical finding but rejected its conclusion as to disability. In March 1982, the district hearing officer again ordered that appellee be awarded temporary total compensation from May 31, 1981 through February 8, 1982 after specifically considering Dr. Paquelet's report.

The commission subsequently in 1983 denied appellee's claim for temporary total disability benefits for the period beginning February 9, 1982, based on the later reports of Drs. Casiano, Ceramella and Kraus. It would have been patently inconsistent for the commission to have relied on the reports of Drs. Leven and Paquelet, since the commission had previously awarded compensation after acknowledging those very reports. Although such "minor " incongruities apparently do not trouble today's plurality, it is my belief that its misguided resurrection of these once-discarded reports as some evidence in support of the commission's 1983 order is an embarrassment to sound rationalization.

The plurality's *de novo* consideration of two such fallible and outdated reports is all the more unconscionable when one considers that the commission itself chose not to rely on them in making its determination *for the period beginning February 9, 1982.* Today's decision is thus a clear signal by a faction of this court that where the specific evidence relied on by the commission does not pass even the minimal scrutiny deemed appropriate,[1]

---

[1] See, *e.g., State, ex rel. Hughes,* v. *Goodyear Tire & Rubber Co.* (1986), 26 Ohio St. 3d 71, in which a plurality of this court remarked that a medical report in which a physician considers and *implicitly accepts* all the allowed conditions relevant to a claim before rendering a final

the plurality will simply rummage through the archives until it ferrets out any other "evidence" to use in propping up the commission's order. The use of the reports of Drs. Leven and Paquelet in the instant case demonstrates a willingness to stretch the "some evidence" rule to its outermost limits. "Some" now apparently means little more than a shred and the "evidence" need not be reliable, relevant or probative, or even current.

Because it must be assumed that those concurring in today's judgment will delve into the file with equal zeal whether the commission has ruled in favor of the employer or the claimant, both parties henceforth should be very uneasy about any meaningful judicial review of the commission's determination of disability. If this case is an indication, those concurring will instead embark on a mindless scavenger hunt in hopes they will find the golden scintilla of evidence they seek so that they might quickly dispense with the appeal.

For the foregoing reasons, I respectfully dissent.

SWEENEY, J., concurs in the foregoing dissenting opinion.

CLIFFORD F. BROWN, J., dissenting. I dissent vigorously to today's decision on several grounds.

First, I must again express my strenuous disapproval of the so-called "some evidence" test which is once again used as an excuse for upholding an order of the Industrial Commission which should not withstand judicial review. I have voiced my dislike for this phraseology on many previous occasions, and I will continue to do so as long it persists. See, e.g., Meeks v. Ohio Brass Co. (1984), 10 Ohio St. 3d 147, 149-150 (Clifford F. Brown, J., concurring), and cases cited therein.

The inanity of this meaningless "some evidence" jargon lies partly in the manner of its genesis. It cropped up overnight like a weed, first finding expression in State, ex rel. Humble, v. Mark Concepts, Inc. (1979), 60 Ohio St. 2d 77 [14 O.O.3d 275]. The origin of this "rule" is obscure at best. It certainly did not find its beginnings in any reasoned judicial analysis or sound legal precedent. Humble was the first case to use this phraseology; it cited as authority State, ex rel. General Motors Corp., v. Indus. Comm. (1975), 42 Ohio St. 2d 278, 283 [71 O.O.2d 255]. No reference can be gleaned anywhere in General Motors to this "some evidence" standard. However, once it found its first, unsupported expression, it immediately gained favor with that faction of this court which is most inclined to pro-

---

evaluation with respect to impairment provides some evidence to support the Industrial Commission's allowance or disallowance of disability claim.

    *Hughes* attempts to set aside this court's requirement set forth in *State, ex rel. Anderson, v. Indus. Comm.* (1980), 62 Ohio St. 2d 166 [16 O.O.3d 199], that medical testimony not evaluating the combined effect of two or more allowed conditions cannot constitute evidence that the claimant is not permanently and totally disabled.

tect the interests of employers over those of employees. Soon this nonsensical phraseology elevated to a legal standard had grown by leaps and bounds until it permeated and rotted the case law in this area. Its popularity is due to its convenient, unlimited flexibility which too often has the effect of validating arbitrary, capricious and unreasonable orders of the commission. The phrase "some evidence" has come to mean "any evidence, no matter how trivial, unreliable, insubstantial or irrelevant." In short, it is a legally unjustifiable, rashly formulated and much-abused standard which robs this court of any meaningful role of judicial review in these cases.

I am fully aware that cases exist which use the "some evidence" phraseology and in which I concurred, a stance which some might say is inconsistent with my long-held belief in its worthlessness. One example is *State, ex rel. G F Business Equip., Inc.,* v. *Indus. Comm.* (1981), 66 Ohio St. 2d 446 [20 O.O.3d 379]. I would emphasize that *G F Business Equip.* was decided when I had been a member of this court for only about six months. At that point, I was as yet unaware of the potential for abuse which the "some evidence" jargon represented. In and of itself, the "some evidence" standard is inoffensive; it is its continued misuse to which I object. My first realization of the incessant abuse of the standard is evidenced in my dissent to *State, ex rel. Teece,* v. *Indus. Comm.* (1981), 68 Ohio St. 2d 165, 170-172 [22 O.O.3d 400], a case decided over six months *after G F Business Equip.* If later cases exist which utilize the "some evidence" phraseology and with which I concurred, the appearance of inconsistency is explained by the fact that, in such cases, I felt that the result reached was justified regardless of the standard used.[2] In any event, my position on the "some evidence" jargon has been clear and unwavering for years. See, *e.g. Meeks* v. *Ohio Brass Co.* (1984), 10 Ohio St. 3d 147, 149-150 (Clifford F. Brown, J., concurring), and cases cited therein; *State, ex rel. Commercial Lovelace Motor Freight, Inc.,* v. *Lancaster* (1986), 22 Ohio St. 3d 191, 195 (Clifford F. Brown, J., concurring).

I turn now to the plurality's analysis of the evidence in this case, which I find to be untenable for the following reasons.

The order of the Industrial Commission in this cause reads as follows:

"The District Hearing Officer finds that the claimant is no longer Temporarily and Totally disabled and can partially return to his former position of employment.

"Temporary Partial Compensation to be awarded at 20% impairment

---

[2] In fact, a review of the *G F Business Equip.* case reveals that the only evidence cited therein concluded unequivocally that the claimant was permanently and totally disabled as a result of work-related chronic bronchitis and emphysema. The commission's order granting him benefits for permanent total disability was not only supported by *some* evidence; it was clearly supported by *all* the evidence. Thus, *G F Business Equip.* was not typical in that the "some evidence" standard was not used therein in a distorted attempt to uphold an unjust and unreasonable order by resorting to trifling scraps of non-evidence.

from February 9, 1982, through May 1, 1983, inclusive, and to continue on submission of wage statements.

"Based on the medical reports of Drs. Kraus, Casiano and Ceramella."

This court has held that "[u]nder R.C. 4123.56 temporary total disability is defined as a disability which prevents a worker from returning to his former position of employment." *State, ex rel. Ramirez,* v. *Indus. Comm.* (1982), 69 Ohio St. 2d 630 [23 O.O.3d 518], syllabus.

The court below found, and I fully agree, that none of the three medical reports cited by the commission actually supports its order finding that appellee is no longer temporarily and totally disabled as that term is defined in *Ramirez.* I am mystified by the commission's citation of its reliance on the reports of Drs. Casiano and Ceramella, and the plurality's apparent acceptance thereof. Both of these reports unequivocally conclude that appellee remained temporarily and totally disabled. Specifically, the most recent report of Dr. Casiano, dated October 18, 1983, concludes that "this patient is temporarily and totally disabed [*sic*] and is unable to perform his job of lifting and laying bricks." The report of Dr. Ceramella, dated January 25, 1983, concludes that "this patient is temporarily and totally disabled and unable to return to his former position of employment and will remain so for seven [7] to eight [8] months."

The report of Dr. Kraus is equally unsupportive of the order in question. Dr. Kraus examined appellee on December 27, 1982, and stated in his report that "as of the time of my examination of [that date] this claimant was not temporarily and totally disabled." But the period for which appellee was seeking benefits for such disability began over eleven months earlier, on February 8, 1982. Thus, Dr. Kraus' report is not probative regarding appellee's extent of impairment *prior* to December 27, 1982, and cannot support an order finding that appellee could have returned to work before that date.

I also find Dr. Kraus' report unreliable in its conclusion that appellee was capable of returning to his former employment, which Dr. Kraus described as "handling bricks." Actually, appellee's position required him to lift as much as 64,000 pounds of bricks in a single workday. Given Dr. Kraus' statement in his report that appellee's wrist still showed signs of swelling and pain in movement, even though minimal,[3] his conclusion that

---

[3] The report of Dr. Kraus states that "on the basis of the essentially negative physical examination as well as the negative X-ray examination and the absence of objective physical findings except for the presence of the three-inch scar Minimal Swelling of the Right Wrist as well as a full range of active and passive motion of the right forearm, wrist and hand with minimal pain, I am forced to conclude that this claimant has made a good recovery from the allowed injury * * *.

"Based upon my physical and X-ray findings, I would conclude that this individual is capable of returning to his former employment which consists of handling bricks. In spite of the fact that he continues to complain of some mild discomfort, I do not think this should prevent him from performing such activity. Therefore, I conclude that as of the time of my ex-

appellee nevertheless could return to his former position is simply not reliable.

Thus, none of the evidence cited by the commission in its order constitutes probative evidence in support thereof, and the order is an abuse of discretion. See *State, ex rel. Hutton,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 9 [58 O.O. 2d 66].

Accordingly, based on the foregoing, I would affirm the judgment of the court of appeals and issue a writ of mandamus directing the commission to order appellant to pay appellee temporary total disability benefits.

---

amination of December 17, 1982, this claimant was not temporarily and totally disabled. Based upon my physical finding, his complaint and the X-ray findings, it is my conclusion that this claimant has a low degree of temporary partial disability of approximately twenty-percent (20%).''