THE STATE, EX REL. BURLEY, APPELLEE, *v.* COIL PACKING, INC.;
INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

[Cite as State, ex rel. Burley, *v.* Coil Packing, Inc. (1987),
31 Ohio St. 3d 18.]

(No. 86-230—Decided June 3, 1987.)

*Michael J. Muldoon,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, *Janet E. Jackson* and *Merl H. Wayman,* for appellant.

*Per Curiam.* This cause is but another example of the multitude of cases in which this court has been asked to evaluate the credibility of the evidence before the Industrial Commission in workers' compensation claims involving two or more allowed conditions. All of these actions are the result of this court's judgment in *State, ex rel. Anderson,* v. *Indus. Comm.* (1980), 62 Ohio St. 2d 166, 16 O.O. 3d 199, 404 N.E. 2d 153, wherein this court established the combined-effects evidentiary rule.

The impetus for this decision was a concern that in the disposition of multiple-injury claims, the commission would premise its determination as to the extent of disability on the basis of medical reports which only considered one of the claimant's recognized conditions. The *Anderson* court sought to prevent this perceived inadequacy by requiring the commission to consider only those medical reports which evaluated the claimant's total

impairment resulting from the combined effect of all his allowed conditions.

While the underlying purpose for the *Anderson* rule may have been well-intentioned, the practical application of this evidentiary doctrine has ultimately undermined the adjudicatory function of the Industrial Commission in the resolution of compensation claims involving multiple injuries. See, generally, Justice Douglas' concurring opinion in *State, ex rel. Rouch, v. Eagle Tool & Machine Co.* (1986), 26 Ohio St. 3d 197, 201-217, 26 OBR 289, 292-306, 498 N.E. 2d 464, 468-480.

To begin with, the *Anderson* rule effectively prevents the commission from ever considering the weight and credibility of any evidence which does not comport with the requisites of *Anderson*. This rule applies without regard to the relevancy with which a particular medical report may have toward one of the claimant's impairments. Not only does this rule deny the commission the benefit of considering what could be some of the most persuasive and credible evidence before it as to one aspect of the claimant's impairments, but it also dissuades the parties from tendering all the relevant evidence in the matter.

Moreover, the *Anderson* evidentiary doctrine has distorted this court's traditional role in the review of mandamus actions challenging the Industrial Commission's determination as to the extent of a disability. Pursuant to R.C. 4123.519, there is no appeal from a determination of the commission as to the extent of a claimant's disability. The only recognized means of review from such determinations is through a mandamus action. *State, ex rel. General Motors Corp., v. Indus. Comm.* (1975), 42 Ohio St. 2d 278, 280, 71 O.O. 2d 255, 257, 328 N.E. 2d 387, 389. However, the party which challenges the Industrial Commission's determination as to the extent of disability bears the burden of demonstrating that the commission's determination manifests an abuse of discretion and, in this context, abuse of discretion has been repeatedly defined as a showing that the commission's decision was rendered without some evidence to support it. *State, ex rel. Elliott, v. Indus. Comm.* (1986), 26 Ohio St. 3d 76, 79, 26 OBR 66, 68, 497 N.E. 2d 70, 72; *State, ex rel. Milburn, v. Indus. Comm.* (1986), 26 Ohio St. 3d 119, 121, 26 OBR 102, 103, 498 N.E. 2d 440, 441; *State, ex rel. Rouch, v. Eagle Tool & Machine Co., supra,* at 198, 26 OBR at 290, 498 N.E. 2d at 466.

When this court has previously reviewed a mandamus action involving a combined-effects issue, it has conducted a review which goes beyond the traditional search for "some evidence" to support the commission's findings. In short, this court evaluated the credibility of the evidence before the commission. Such a review placed this court in the role of a "super commission," a role never envisioned by either the Ohio Constitution or the General Assembly.

Pursuant to the foregoing analysis, we hereby overrule the *Anderson* decision and abandon the combined-effects evidentiary standard announced therein. The commission alone shall be responsible for the evalua-

tion of the weight and credibility of the evidence before it. This court's role in the review of mandamus actions challenging the Industrial Commission's decision as to the extent of disability in cases involving multiple allowed conditions shall henceforth be limited to a determination as to whether there is some evidence in the record to support the commission's stated basis for its decision.

Looking now to the matter at hand, the district hearing officer discontinued relator's temporary total disability benefits on the grounds that relator could return to his former position of employment. This determination was based upon the reports of Drs. Reynolds, Steiman, Turton and Hardie. Drs. Steiman and Reynolds both concluded that relator's physical impairment would not prevent him from returning to his former position of employment. Dr. Turton evaluated relator's psychiatric impairment and likewise concluded that it was not work-restrictive. Finally, Dr. Hardie conducted a file review of relator's file which, at the time, contained the reports of Drs. Reynolds, Steiman and Turton. Upon reviewing this information, Dr. Hardie stated that the file, "as reviewed & accepted," did not indicate that the claimant was impaired from returning to his former position of employment.

A claimant's right to continued temporary total disability compensation is extinguished upon a finding that: (1) he has returned to work, (2) his treating physician has made a written statement that he is capable of returning to his former position of employment, or (3) that the temporary disability has become permanent. *State, ex rel. Ramirez,* v. *Indus. Comm.* (1982), 69 Ohio St. 2d 630, 632, 23 O.O. 3d 518, 519, 433 N.E. 2d 586, 588. This court has recently recognized that for purposes of the second part of the *Ramirez* test, the commission may rely upon the medical opinion of a doctor other than the claimant's treating physician. *State, ex rel. Milburn,* v. *Indus. Comm., supra.* Again, it is the commission which determines the weight and credibility to be given to the medical reports admitted into evidence.

We find that the reports of Drs. Reynolds, Steiman, Turton and Hardie constitute some evidence to support the hearing officer's finding that relator could return to his former position of employment. Accordingly, we reverse the judgment of the court of appeals and reinstate the decisions of the district hearing officer and the board of review.

*Judgment reversed.*

MOYER, C.J., DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

HOLMES, J., concurs in judgment only.

LOCHER, J., concurs in judgment only and dissents in part.

SWEENEY, J., dissents.

DOUGLAS, J., concurring. For the reasons stated, where herein pertinent, in my concurring opinion in *State, ex rel. Rouch,* v. *Eagle Tool & Machine Co.* (1986), 26 Ohio St. 3d 197, 201-217, 26 OBR 289, 292-306, 498 N.E. 2d 464, 468-480, I concur in the syllabus and judgment of the court.

I write separately to emphasize the fact that the standard of review set forth in this decision incorporates the reporting requirements pronounced in *State, ex rel. Mitchell,* v. *Robbins & Myers, Inc.* (1983), 6 Ohio St. 3d 481, 6 OBR 531, 453 N.E. 2d 721. In *Mitchell,* this court recognized that a good deal of the litigation generated in this field was the result of the commission's failure to provide sufficient reasoning in support of its determinations. In an effort to rectify this problem, this court required the commission to state with specificity which evidence it had relied upon in reaching its conclusion and to provide a brief explanation stating why the claimant is or is not entitled to the benefits requested. As a means of compelling compliance with these reporting requirements, this court declared that it would "* * * no longer search the commission's file for 'some evidence' to support an order of the commission not otherwise specified as a basis for its decision." *Id.* at 484, 6 OBR at 534, 453 N.E. 2d at 724. The syllabus law presented in the case at bar similarly limits this court's review to the commission's "* * * stated basis for its decision."

The reporting requirements of *Mitchell* not only provide this court with the necessary tools to perform a meaningful mandamus review of the commission's determinations, but such reporting also lends a sense of predictability for claimants and employers alike in the disposition of disability claims. By providing the parties with a brief explanation as to how the various disability factors, such as age, education and work history, affect the *medically appraised* degree of impairment, the commission affords future litigants invaluable insight into its decision-making process. This insight should eventually translate into a more predictable and less litigious system.

LOCHER, J., concurring in judgment only and dissenting in part. I concur in the judgment only because there is some evidence to support the commission's determination. However, I do not agree with today's decision to overrule *State, ex rel. Anderson,* v. *Indus. Comm.* (1980), 62 Ohio St. 2d 166, 16 O.O. 3d 199, 404 N.E. 2d 153.

In *Anderson, supra,* the court decided that the commission, in determining whether a claimant's disability has been caused by the combined effect of two or more allowed conditions, may not consider and rely on a medical report in which the physician does not evaluate the combined effect of all the allowed conditions. Later, in *State, ex rel. Hughes,* v. *Goodyear Tire & Rubber Co.* (1986), 26 Ohio St. 3d 71, 74, 26 OBR 61, 64, 498 N.E. 2d 459, 462, it was recognized "that much confusion has resulted from this court's desire to insure that impairment evaluations be rendered by physicians who were aware of all relevant aspects of a claimant's al-

lowed conditions." As a result, we held that "reports which consider and impliedly accept all the allowed conditions relevant to the claim before rendering a final evaluation with respect to impairment are 'some evidence' to support a commission allowance or disallowance of a permanent total disability claim." *Id.*

Subsequently, in *State, ex rel. Rouch,* v. *Eagle Tool & Machine Co.* (1986), 26 Ohio St. 3d 197, 26 OBR 289, 498 N.E. 2d 464, it was recognized that it was impracticable to require, through hypertechnical evidentiary rules, that physicians pretend to be specialists in all fields of medicine. We therefore modified *Anderson, supra,* and held that "* * * the Industrial Commission, in determining whether a claimant is disabled due to the combined effect of two or more allowed conditions, may base its finding upon the medical report of a physician who examines the claimant with regard to one of the allowed conditions and recognizes the existence of the other allowed condition(s) by referring to them in his report." *Id.* at 199, 26 OBR at 291, 498 N.E. 2d at 467. We further held "that the commission, in making this disability determination, may consider and rely on a medical report in which an examining physician evaluates a claimant only with regard to the condition that relates to the physician's particular area of expertise." *Id.*

While I strongly adhere to the view that this court should not act as a super Industrial Commission by determining what is and is not credible evidence, *State, ex rel. Case,* v. *Indus. Comm.* (1986), 28 Ohio St. 3d 383, 390, 28 OBR 442, 448, 504 N.E. 2d 30, 37 (Locher, J., dissenting), I still believe that physicians in a multiple-conditions claim should at least indicate an awareness that other allowed conditions exist which might potentially influence their conclusions with respect to impairment.

Abandoning *Anderson* in its entirety may reaffirm the principle that we as a court should not interfere with the commission's fact-finding function where there is relevant evidence to support the commission's finding. However, it may lead to conclusions by physicians with respect to impairment that are incomplete at best. The decisions which loosened the reins of *Anderson* were designed to meet our general obligation to construe the workers' compensation laws in a remedial manner and place a wider range of evidence before the commission. *Rouch* at 199, 26 OBR at 291, 498 N.E. 2d at 467. Limited reports of physicians that fail to even marginally consider the "big picture" with respect to impairment may have adverse effects on these goals.