DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Elizabeth A. Pence, filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied her application for permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate of this court. On July 30, 2004, the magistrate issued a decision including findings of fact and conclusions of law and therein recommended that this court grant relator's request for mandamus. (Attached as Appendix A.) The magistrate found the commission's denial of PTD was not supported by evidence in the record and was an abuse of discretion. Respondent, Jet Corr, Inc., ("respondent") and the commission each timely filed objections to the magistrate's decision, which objections are now before the court. Relator filed a reply to respondent and the commission's objections, arguing that since the commission's order was not supported by some evidence, a writ of mandamus must issue. For the reasons that follow, we sustain the objections of the commission and the respondent.
 {¶ 3} Respondent and the commission's objections surround the vocational report of William H. Hyde, Ph.D., ("Hyde"). In their objections, respondent and the commission each contend that the magistrate's conclusions of law were contrary to State ex rel.Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139, 141,666 N.E.2d 1125, as the commission may accept the findings in a vocational report and use its discretion to draw different conclusions. Specifically, respondent and the commission jointly argue that the magistrate improperly substituted his judgment as to the weight of the evidence regarding relator's non-medical disability factors on her employability. As such, the commission contends that the magistrate disregarded its expertise in vocational matters. State ex rel. Jackson v. Indus. Comm. (1997),79 Ohio St.3d 266, 27, 680 N.E.2d 1233. Respondent contends that the magistrate's conclusion that the commission's analysis is "suspect" is insufficient to support the writ of mandamus ordered. Further, respondent contends the determination of disputed facts regarding whether an injured worker is entitled to compensation is particularly within the authority and jurisdiction of the commission. State ex rel. Milburn v. Indus.Comm. (1986), 26 Ohio St.3d 119, 26 OBR 102, 498 N.E.2d 440.
 {¶ 4} In its objections, the commission addressed the specific non-medical disability factors from Hyde's report considered by the magistrate in his decision. Regarding her age, the commission argues the staff hearing officer ("SHO") may properly rely upon the portion of Hyde's report, which states her age "would not preclude claimant from performing entry level work." (July 30, 2004 Decision at 8.) Further, the commission contends that it remains within its discretion in viewing relator's age as an overall neutral vocational factor. We agree, and find that regardless of Hyde's opinion of relator's physical capabilities, the commission, as the ultimate evaluator of non-medical vocational factors, was entitled to independently weigh the evidence and reach its own conclusion. Jackson at 270.
 {¶ 5} The commission's contention regarding relator's education surrounds the magistrate's reliance on Hyde's finding that her education was "barely adequate" to meet the basic demands of most sedentary and many light duty occupations." (July 30, 2004 Decision at 8.) The commission asserts that the SHO's deletion of the modifier "barely" in finding that her education was a neutral vocational asset does not significantly alter the meaning of Hyde's findings regarding the relator's education. We agree with the commission's reliance on State ex rel.Consolidation Coal Co. v. Industrial Comm. 78 Ohio St. 3d 176,677 N.E.2d 338, in arguing that the magistrate may not substitute his judgment for the weight of the commission. As Supreme Court of Ohio opined in Consolidation Coal Co., "`[t]o go further and assess the credibility of the evidence would place this court in the role of a `super commission,' a role never envisioned by either the Ohio Constitution or the General Assembly.'" Id. citing State ex rel. Burley v. Coil Packing, Inc. (1987),31 Ohio St. 3d 18, 20, 31 Ohio B. Rep. 70, 72, 508 N.E.2d 936, 938.
 {¶ 6} Finally, the commission argues it did not abuse his discretion in finding relator's work history to be a neutral vocational asset. Specifically, the commission asserts that the SHO properly relied upon Hyde's statement indicating relator has a "relatively stable work history" and has "performed some semi-skilled work." The commission contends that Hyde's statements demonstrate relator can learn to perform semi-skilled levels of employment. Further, the commission addresses the portion of Hyde's report, which states that following remediation, relator could bring her reasoning, math and language skills to the average level. The commission argues that the magistrate quoted portions of Hyde's report, which can be interpreted as limiting relator's employability. Relying onJackson and Ewart, the commission contends it has the discretion to review all aspects of a work history and to make the final determination regarding employability. We agree, and find the commission was entitled to weigh this evidence and conclude the relator's work history is a neutral vocational asset.
 {¶ 7} In the present case, we find the commission did not abuse its discretion in its denial of relator's application for PTD compensation. The commission, not this court, is the exclusive evaluator of the weight and credibility of the evidence. State ex rel. LTV Steel Co. v. Indus. Comm. (2000),88 Ohio St.3d 284, 287, 725 N.E.2d 639. As the record contains some evidence to support the commission's findings, we must defer to its judgment. Id.
 {¶ 8} Accordingly, we sustain the respondent and the commission's objections to the magistrate's decision. We adopt the magistrate's findings of fact, we reject the magistrate's conclusions of law, and we hereby deny relator's request for a writ of mandamus.
Objections sustained; writ denied.
French and Wright, JJ., concur.
Wright, J., retired of the Supreme Court of Ohio, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Elizabeth A. Pence,: Relator, : v. : No. 04AP-124 :
Industrial Commission of Ohio, : (REGULAR CALENDAR) Jet Corr Inc. and White Cottage : Restaurant, : Respondents. :
 MAGISTRATE'S DECISION Rendered on July 30, 2004 Law Offices of Thomas Tootle Co., L.P.A., and ThomasTootle, for relator.
Jim Petro, Attorney General, and Stephen D. Plymale, for respondent Industrial Commission of Ohio.
Lane, Alton Horst, LLC, and Barbara K. Letcher, for respondent Jet Corr Inc.
 IN MANDAMUS {¶ 9} In this original action, relator, Elizabeth A. Pence, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her permanent total disability ("PTD") compensation, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 10} 1. On September 28, 2000, relator sustained an industrial injury while employed as a "box assembler" at a factory. On that date, relator injured her back when she slipped and fell on a conveyer belt. She was 57 years old on the date of injury and she has not returned to work since that date. The industrial claim is allowed for "sprain lumbosacral; lumbar/lumbosacral disc degeneration; aggravation of pre-existing lumbar degenerative disc disease at L5-S1," and is assigned claim number 00-530888.
 {¶ 11} 2. Relator was also injured on August 3, 1994, while employed as a waitress. The industrial claim for this injury is allowed for "left epicondylitis," and is assigned claim number L60028-27.
 {¶ 12} 3. On January 10, 2003, relator filed an application for PTD compensation.
 {¶ 13} 4. On April 29, 2003, relator was examined, at the commission's request, by orthopedist William Reynolds, M.D. Dr. Reynolds examined relator for all the allowed conditions of both industrial claims. In his report, dated May 5, 2003, Dr. Reynolds stated:
It is my opinion this injured worker at this point has reached MMI. Using the AMA Guides, Fourth Edition, she would qualify as a DRE Category III with 10% PPI of function. That is considering the pain radiating into her right leg.
 {¶ 14} 5. On April 29, 2003, Dr. Reynolds completed a physical strength rating form on which he indicated that relator is medically able to perform only sedentary work.
 {¶ 15} 6. The commission requested an employability assessment report from William H. Hyde, Ph.D., a vocational expert. The Hyde report, dated June 6, 2003, responds to the following query:
Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform, immediately and/or following appropriate academic remediation.
 {¶ 16} Indicating acceptance of Dr. Reynolds' reports and responding to the above query, Hyde listed the following "Employment Options":
Immediate: Stuffer; Sorter; Addresser; Final Assembler; Inspector, Eyeglass Frames; Election Clerk; Service Clerk; Order Clerk, Food Beverage; Machine Engraver I; Microfilming Document Preparer.
Following "brush-up" remediation to bring all RMLs back up to USDOL = 3 level: Travel Clerk; Repair Order Clerk; Hospital Admitting Clerk; Surveillance System Monitor.
Under "III. Effects of Other Employability Factors," the Hyde report states:
1. Question: How, if at all, do the claimant's age, education, work history, or other factors (physical, psychological, and sociological) affect his/her ability to meet the basic demands of entry level occupations?
Answer: Age: 60 years old. May affect ability to obtain employment due to reduced marketability, age discrimination. Ability to maintain physical and mental stamina for a full work week and adaptability to changes in work tasks or the work environment may be more difficult, but would not preclude claimant from performing entry-level work.
Education: Lack of a GED will make it more difficult for claimant to obtain work. Completion of school through the 8th grade level is barely adequate to meet the basic demands of most sedentary and many light-duty occupations. Claimant reports she can read and write, and can do basic math, though not well.
Work History: May reflect limited adaptation to clerical and retail work tasks or settings. Claimant has a relatively stable work history, though there is no record of employment prior to 1994. She has performed some semi-skilled work, but such skills have little to no transferability to most entry-level sedentary or many light occupations.
* * *
2. Question: Does your review of background data indicate whether the claimant may reasonably develop academic or other skills required to perform entry level Sedentary or Light jobs?
Answer: Claimant has demonstrated the ability to develop some academic/work-related skills that have limited transferability to many entry-level sedentary or light jobs. There is no basis, however, to find incapacity for academic remediation bring all of the RMLs back up to the USDOL = 3 level.
3. Question: Are there significant issues regarding potential employability limitations or strengths which you wish to call to the SHO's attention?
Answer: Strengths:
1) Claimant reports that she can read and write (and do basic math, but not well).
2) Claimant has reported a relatively stable work history with no gaps. She returned to work after her first injury and also attempted a RTW after the second injury, possibly suggesting a strong work ethic.
Limitations:
1) Age — claimant is 60 years old.
2) Claimant has completed formal schooling through the 8th
grade only.
3) The limited number of skills claimant acquired from work history have little to no transferability to most sedentary and many light occupations.
4) Claimant has not worked since 2000 and this may prove to be a significant barrier to obtaining and/or readjusting to reemployment.
5) Claimant's capacity to adapt to unfamiliar clerical or retail work tasks and settings may deserve some consideration.
6) Aside from age guidelines, the fact that claimant has applied for SSDI benefits and has not indicated an interest in rehabilitation services may indicate a lack of interest or motivation to seek reemployment.
Under "IV. Employability Assessment Database," the Hyde report states:
B. WORK HISTORY:
Job Title * * * Skill Level Strength Level Dates
Box Assembler * * * Unskilled Medium 7/00-9/00 Presser, All-Around * * * Semi-skilled Medium 10/97-7/00 Order Picker * * * Unskilled Medium 9/95-2/97 Production Assembler * * * Unskilled Light 9/94-4/95 Waitress * * * Semi-skilled Light 12/91-8/94
C. EDUCATIONAL HISTORY:
Highest Grade Completed: 8th grade Date of Last Attendance: 1959 H.S. Graduate: No GED: No Vocational Training: None ICO Educational Classification: Limited education (USDOL = 3)
* * *
E. ADJUSTED WORKER TRAIT PROFILE:
General Educational Development (GED):
Grade Level USDOL Level
(R) Reasoning 7-11 (ICO) 3 (M) Math 4-6 2 (L) Language 4-6 2
 {¶ 17} 7. Following a July 30, 2003 hearing, a staff hearing officer ("SHO") issued an order denying relator's PTD application. The SHO's order states:
The Staff Hearing Officer relies upon the persuasive reports dated 04/29/2003 and 05/05/2003 that were prepared by Industrial Commission Orthopedic Medical Specialist Dr. Reynolds. The Doctor supports the conclusion that the allowed physical conditions do not prevent the injured worker from engaging in at least certain types of sustained remunerative employment of a sedentary nature.
The Staff Hearing Officer notes the Employability Assessment Report dated 06/06/2003 that was prepared by Industrial Commission Vocational Expert Dr. Hyde. The Vocational Expert supports the conclusion that based on the persuasive reports of Dr. Reynolds the injured worker retains the residual functional capacities to perform sustained remunerative employment consistent with a number of job titles.
The job titles that were identified by the Vocational Expert as being current employment options for the injured worker include: stuffer; sorter; addresser; final assembler; inspector, eyeglass frames; election clerk; service clerk, order clerk, food and beverage; machine engraver I; and microfilming document preparer.
The Staff Hearing Officer agrees. The residual functional capacities as set forth in the above persuasive medical reports clearly would not physically prevent the injured worker from engaging in sustained remunerative employment consistent with the job titles identified by Vocational Expert Dr. Hyde as being current employment options.
The injured worker indicated at hearing that the injured worker is currently approximately 60 years of age. The Staff Hearing officer finds that the injured worker's age is overall viewed as a neutral vocational asset. Vocational Expert Dr. Hyde indicates that the injured worker's age would not preclude the injured worker from performing entry-level work.
The Staff Hearing Officer again agrees. The injured worker's age in and of itself clearly would not prevent the injured worker from obtaining and performing sustained remunerative employment consistent with the jobs identified by Vocational Expert Dr. Hyde as being current employment options.
The injured worker indicated at hearing that the injured worker has completed approximately the 8th Grade of education. The Staff Hearing Officer finds that the injured worker's level of education is overall viewed as a neutral vocational factor. The injured worker is able to read, to write, and to perform some basic math. Vocational Expert Dr. Hyde indicates that the level of education is adequate to meet the basic demands of most sedentary occupations.
The Staff Hearing Officer again agrees. The injured worker's educational level, in combination with the ability to read, write, and to perform some basic math, would assist the injured worker in obtaining and performing the entry-level, unskilled types of employment identified by Vocational Expert Dr. Hyde as being current employment options.
The injured worker's prior work history was identified as including the following: semi-skilled employment as a dry cleaning presser and as a waitress; and unskilled employment as a box assembler; order picker; and production assembler. The injured worker testified that her waitressing job also included activities as a cashier.
Vocational Expert Dr. Hyde notes that the injured worker's prior work history demonstrates a relatively stable work history, and that the injured worker has been able to learn and to perform even semi-skilled levels of employment.
The Staff Hearing Officer again agrees. The injured worker's prior work history is overall viewed as being a neutral to positive vocational asset. The injured worker has demonstrated the ability to perform work as complex as being a cashier and a waitress. In addition, she has experience in factory and assembly line settings. Based on a careful consideration of the above, as well as all of the evidence in file and at hearing, the Staff Hearing Officer concludes that the injured worker is capable of performing sustained remunerative employment consistent with the job titles already identified by Vocational Expert Dr. Hyde as being current employment options. Therefore the injured worker is not permanently and totally disabled.
 {¶ 18} 8. On February 5, 2004, relator, Elizabeth A. Pence, filed this mandamus action.
Conclusions of Law:
 {¶ 19} Because the commission's analysis of the nonmedical factors is seriously flawed, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 20} For its threshold medical determination, the commission relied exclusively upon the reports of Dr. Reynolds. Based upon those reports, the commission found that the industrial injuries medically permit sedentary employment. Here, relator does not challenge Dr. Reynolds' reports nor the commission's conclusion that relator is medically able to perform sedentary work. However, relator does challenge the commission's analysis of the nonmedical factors.
 {¶ 21} With respect to the nonmedical or vocational issues before it, the commission is the expert. State ex rel. Jacksonv. Indus. Comm. (1997), 79 Ohio St.3d 266, 271. Vocational evidence submitted by experts is not critical or even necessary to the commission's nonmedical determination. Id. Accordingly, the commission may accept some findings contained in a vocational report, yet reject the ultimate conclusion of the report. Stateex rel. Ewart v. Indus. Comm. (1996), 76 Ohio St.3d 139, 141.
 {¶ 22} The SHO's nonmedical analysis is contained in 11 paragraphs of the order where the SHO discusses the Hyde report. The SHO begins his analysis by stating that he agrees with Hyde's listing of the employment options that Hyde correlated with Dr. Reynolds' medical findings.
 {¶ 23} Four times in his order, the SHO states that he agrees with the portion of the Hyde report previously discussed in the order. However, in the magistrate's view, the order repeatedly suggests that the SHO either (1) did not agree with the critical portions of the Hyde report, or (2) did not carefully read or understand the report.
 {¶ 24} The SHO states that he agrees with Hyde's assessment of relator's age of 60 years which the SHO finds to be "a neutral vocational asset." However, Hyde's assessment of age does not suggest "a neutral vocational asset." Again, Hyde states:
* * * 60 years old. May affect ability to obtain employment due to reduced marketability, age discrimination. Ability to maintain physical and mental stamina for a full work week and adaptability to changes in work tasks or the work environment may be more difficult, but would not preclude claimant from performing entry-level work.
 {¶ 25} The SHO then states that he agrees with Hyde's assessment of relator's educational status which the SHO viewed as a "neutral vocational factor." The SHO then misstates a finding of the Hyde report when the SHO writes that Hyde "indicates that the level of education is adequate to meet the basic demands of most sedentary occupations." (Emphasis added.) In fact, Hyde wrote "[c]ompletion of school through the 8th grade level is barely adequate to meet the basic demands of most sedentary and many light-duty occupations." (Emphasis added.) In the magistrate's view, deletion of the modifier barely
significantly alters the meaning of Hyde's finding.
 {¶ 26} Hyde also found that "[l]ack of a GED will make it more difficult for claimant to obtain work." In the magistrate's view, Hyde's assessment of relator's educational status does not suggest "a neutral vocational factor" as the SHO states in his order.
 {¶ 27} The SHO states that he agrees with Hyde's assessment of relator's work history which the SHO views as a "neutral to positive vocational asset." The SHO also finds that relator preformed "complex" work as a cashier and as a waitress; however, Hyde provides a much different picture of relator's work history. According to Hyde, relator "has performed some semi-skilled work, but such skills have little to no transferability to most entry-level sedentary or many light occupations." Hyde also points out that "[c]laimant's capacity to adapt to unfamiliar clerical or retail work tasks and settings may deserve some consideration."
 {¶ 28} Hyde's assessment of relator's work history does not suggest a so-called "neutral to positive vocational asset."
 {¶ 29} Certainly, the commission is free as the vocational expert to disagree with its own employability assessor; however, the commission abuses its discretion when it repeatedly states agreement with key portions of the employability assessment report, yet strongly suggests either disagreement with or misunderstanding of the report being reviewed. Under such circumstances, the commission analysis is suspect and cannot stand.
 {¶ 30} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order denying relator's application for PTD compensation, and, in a manner consistent with this magistrate's decision, enter a new order either granting or denying relator's PTD application.
 /s/ Kenneth W. Macke
KENNETH W. MacKE MAGISTRATE