DECISION
{¶ 1} Relator, Julio Paneto, filed this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying him temporary total disability compensation on grounds that he voluntarily abandoned his employment, and to enter an order granting him that compensation.
 {¶ 2} This court referred this matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny the requested writ. (Attached as Appendix A.) Relator filed an objection to the magistrate's decision, arguing that the commission's decision is based upon fraudulent evidence.
 {¶ 3} Through his objection, relator essentially reargues an issue presented to the magistrate. However, we agree with the magistrate's conclusion that the commission considered relator's claim that the evidence — i.e., relator's purported resignation — was unreliable and chose to believe relator's employer, rather than relator. This court may not reweigh that evidence, nor may we second-guess the commission's credibility determinations. Rather, "[t]he commission is the sole evaluator of evidentiary weight and credibility." State ex rel. Dobbins v. Indus. Comm.,109 Ohio St.3d 235, 2006-Ohio-2286, at ¶ 8, citing State ex rel.Burley v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18. Therefore, we overrule relator's objection.
 {¶ 4} Finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it, except that we correct a misspelling in ¶ 21. In accordance with the magistrate's decision, the requested writ is denied.
Objection overruled, writ of mandamus denied.
Petree and McGrath, JJ., concur.
 APPENDIXA IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
The State of Ohio on Relation : of Julio Paneto, : :
Relator, : :
: v. : No. 05AP-694 :
: Areway, Inc. and The Industrial : (REGULAR CALENDAR) :
Commission of Ohio, : :
Respondents. :
 MAGISTRATE'S DECISION Rendered on January 18, 2006 Shapiro, Marnecheck Reimer, Philip A. Marnecheck andJennifer Wilson, for relator.
Vorys, Sater, Seymour and Pease LLP, Margaret D. Everett andWeldon H. Rice, for respondent Areway, Inc.
Jim Petro, Attorney General, and Kevin J. Reis, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 5} In this original action, relator, Julio Paneto, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him temporary total disability ("TTD") compensation beginning December 31, 2004, on grounds that he voluntarily abandoned his employment, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 6} 1. On June 17, 2004, relator sustained an industrial injury while employed as a polisher for respondent Areway, Inc. ("Areway"), a state-fund employer. On that date, a sanding wheel snapped off striking relator's right wrist. X-rays taken on the date of injury showed a navicular fracture and perilunate dissociation. The industrial claim is allowed for "sprain right wrist, fracture of right navicular and dislocated right wrist-closed," and is assigned claim number 04-365400.
 {¶ 7} 2. On July 23, 2004, relator underwent surgery of the right wrist. The surgery was performed by Harry A. Hoyen, M.D.
 {¶ 8} 3. On July 29, 2004, relator returned to Dr. Hoyen for application of a short arm cast.
 {¶ 9} 4. On a Physician's Report of Work Ability form dated August 26, 2004, Dr. Hoyen indicated that relator could return to work on September 7, 2004, with the restriction that he not use his right arm.
 {¶ 10} 5. On November 8, 2004, relator returned to work at Areway. Areway time-clock cards show that relator worked each week beginning Monday, November 8 through Thursday, December 30, 2004.
 {¶ 11} 6. The record contains a hand-printed statement on Areway stationary dated December 30, 2004. The statement is undisputedly signed by relator and states:
I, Julio Paneto, am resigning my position from Areway as of 12/30/04 because the roof of my house in Cleveland caved in and therefore I am moving to Florida.
 {¶ 12} 7. Earlier, on a C-84 dated November 5, 2004, Dr. Hoyen certified a period of TTD from September 7, 2004 to an actual return-to-work date of November 8, 2004.
 {¶ 13} 8. On a C-84 dated January 12, 2005, Dr. Hoyen certified a period of TTD from November 8, 2004 through an estimated return-to-work date of February 1, 2005. On the C-84, Dr. Hoyen stated that relator should "remain [on] light duty" with a ten pound lifting restriction.
 {¶ 14} 9. On January 19, 2005, relator, through counsel, filed a C-86 motion stating: "Now comes the claimant and respectfully requests that the BWC grant TT compensation from 11-25-04. Claimant has not been able to work since 11-25-04 because of his hand injury."
 {¶ 15} 10. On January 19, 2005, Jenny Feazell, Areway's Human Resources Director, wrote:
I receive a C-86 Motion today from Mr. Paneto's attorney. * * * The information contained in the Motion is not true. I have attached time cards providing proof that Mr. Paneto worked from 11/8/04, when he returned from a medical leave of absence due to his wrist injury through 12/30/04 at which time he gave us written notification that he was quitting his job at Areway, Inc. to move to Florida because the roof of his house in Cleveland caved in under the weight of the snow.
We would like the C-86 Motion denied in its entirety as Mr. Paneto removed himself from employment for reasons other than a BWC matter.
 {¶ 16} 11. On January 24, 2005, relator returned to see Dr. Hoyen. Dr. Hoyen's office note of that date states: "He has discontinued his employment at the present occupation. He is interested in vocational retraining. This is appropriate. There will be restrictions. This is due to the severity of the soft tissue contracture."
 {¶ 17} 12. On a C-84 dated January 24, 2005, Dr. Hoyen extended his prior certification of TTD from February 1, 2005 to an estimated return-to-work date of March 15, 2005.
 {¶ 18} 13. On March 3, 2005, relator was examined by Cyril E. Marshall, M.D., as the attending physician. Dr. Marshall wrote:
* * * He is here today because of persistent pain in right wrist. He is not working. He is not able to perform the heavy work involved with his job because of this injury. He states he has been off work since 12-30-2004. * * *
* * *
He needs intensive physical therapy to get back his grip and dexterity. He may never be able to resume the heavy work he was doing.
 {¶ 19} 14. Following a March 22, 2005 hearing at which relator was present with counsel, a district hearing officer ("DHO") issued an order granting TTD compensation and finding that relator did not voluntarily resign from his former position of employment. At the hearing, Areway appeared only through its third-party administrator. No witnesses appeared on behalf of Areway. The DHO order explains:
It is the order of the District Hearing Officer that the C-86 Motion filed by Injured Worker on 01/19/2005 is granted to the extent of this order.
Upon review and consideration of all the evidence in the claim file and statements at hearing, the claimant shall be paid temporary total disability compensation from 12/31/2004 to 03/21/2005 and to continue upon submission of evidence of same.
The employer's representative provided evidence that the claimant voluntarily abandoned his employment. The claimant signed a statement on 12/30/2004 saying he resigned from work because his roof caved in and he was moving to Florida.
At hearing, the claimant stated that he could not read the statement and was unaware what he signed on 12/30/2004. He said he tried to get some time off to repair his roof. He said he never told anyone he was moving to Florida. The claimant does not speak English.
The District Hearing Officer finds that the [sic] there is a lack of persuasive evidence of a voluntary resignation on 12/30/2004. Temporary total disability compensation remains payable.
This order is based on the reports of Drs. Hoyen and Marshall.
 {¶ 20} 15. Areway administratively appealed the DHO order of March 22, 2005.
 {¶ 21} 16. Areway's appeal was heard by a staff hearing officer ("SHO") on April 26, 2005. At the hearing, relator again appeared with counsel and an [interpreter]. Areway again appeared through its third-party administrator. However, at this hearing, Areway's third-party administrator brought Ms. Sedlak and Ms. Feazell to the hearing. (The magistrate was informed at oral argument that Ms. Sedlak is employed by Areway in its human resources department.)
 {¶ 22} 17. Following the April 26, 2005 hearing, the SHO issued an order noting the appearances of Ms. Sedlak and Ms. Feazell and the third-party administrator, Mr. O'Neill, for Areway. The SHO order vacates the DHO's order and denies relator's January 19, 2005 motion. The SHO order explains:
Staff Hearing Officer finds that, the claimant worked from 11/25/2004-12/30/2004. Further, Staff Hearing Officer finds that, the claimant voluntarily tendered his resignation to the employer in anticipation of moving. Said resignation was accepted by the employer and this occurred after the employer had provided comporting employment to the claimant for many weeks. Staff Hearing Officer does not find the claimant's testimony to be consistent and finds the employer's testimony to be persuasive.
Therefore, temporary total disability compensation from 12/31/2004 to date is denied based on a voluntary abandonment of employment.
 {¶ 23} 18. Relator administratively appealed the SHO order of April 26, 2005.
 {¶ 24} 19. In support of his administrative appeal, relator submitted his own affidavit executed May 13, 2005. Relator's affidavit states:
[Two] My employer in this claim and at the time of my injury was Areway, Inc.
[Three] I am an American Citizen of Puerto Rican descent.
[Four] I do not speak English.
[Five] I cannot read English.
[Six] On June 17, 2004, I sustained an industrial injury during the course and scope of my employment with Areway.
[Seven] I returned to work and was working on restricted duty when the roof caved in on the house I was renting.
[Eight] I spoke with the owner regarding this incident with the assistance of Pablo Rodriguez who was translating.
[Nine] The owner told me to take some time off to fix the roof on my house or to find a new place to live and to come back when I was done.
[Ten] When I went in on Friday to pick up my check Jennifer Feazell, she would not give me my check until I signed a paper she wrote.
[Eleven] I signed the handwritten note, because Jennifer Feazell told me I had to in order to get my check.
[Twelve] I could not read what she wrote, because it was in English.
[Thirteen] Unfortunately, I did not ask what the note said. I just new [sic] I had to sign it to get my paycheck.
[Fourteen] I later learned that what I signed stated that I was quitting my job and moving to Florida.
[Fifteen] I never moved to Florida. I never had any plans of moving to Florida. And I never told anyone at Areway that I was moving to Florida.
[Sixteen] I never quit my job at Areway or had any intention of quitting my job are Areway.
[Seventeen] Areway deliberately mislead me as to what I was signing so that they could terminate my employment in retaliation for pursuing a workers' compensation claim.
 {¶ 25} 20. In further support of his administrative appeal, relator also submitted affidavits from Carlos Sosa, executed May 12, 2005, and Juan Guzman-Perez, executed April 27, 2005.
 {¶ 26} 21. Both Sosa and Guzman-Perez allege in their affidavits that Areway retaliated against them by terminating them from their employment for pursuing industrial claims. However, as previously indicated, neither Sosa nor Guzman-Perez appeared or testified at the administrative hearings at issue in this action.
 {¶ 27} 22. On May 20, 2005, another SHO mailed an order refusing relator's administrative appeal from the SHO order of April 26, 2005.
 {¶ 28} 23. On July 5, 2005, relator, Julio Paneto, filed this mandamus action.
Conclusions of Law:
 {¶ 29} Two issues are presented: (1) whether the commission, through its SHO, abused its discretion in finding that relator voluntarily resigned his employment at Areway on December 30, 2004; and (2) whether the commission abused its discretion by refusing to hear relator's administrative appeal from the SHO order of April 26, 2005.
 {¶ 30} Finding no abuse of discretion with respect to either issue, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 31} Turning to the first issue, it is settled that it is the commission and its hearing officers that weigh the evidence. In mandamus, this court does not ordinarily reweigh the evidence for the commission. Nevertheless, in this action, relator repeatedly invites this court to reweigh the evidence in a light most favorable to relator. This court must decline the invitation.
 {¶ 32} Even though there is no transcript of the April 26, 2005 hearing, it is apparent from the record that relator and Areway presented conflicting versions of what happened on December 30, 2004, when relator admittedly signed the printed statement indicating that he was resigning his position at Areway and moving to Florida because the roof of his house in Cleveland had collapsed.
 {¶ 33} It is relator's position here that he was fraudulently mislead into signing the statement in retaliation for pursuing his industrial claim. (Relator's brief, at 3.) According to relator, because he does not read or speak English, he did not understand the statement that he signed on December 30, 2004. According to relator, he had requested a few days off work to repair a damaged roof on his house, but he never told Areway that he was resigning his employment or that he was moving to Florida. Id. at 5. According to relator, "Areway did not have any light duty work available for [him] and instead chose to take advantage of [his] inability to speak or read English." Id. According to relator, "Areway did not want to comply with [his] work restrictions and * * * [therefore] fraudulently induced him into signing a letter so they could terminate his employment." Id. at 6.
 {¶ 34} We know that Ms. Sedlak and Ms. Feazell appeared as witnesses on behalf of Areway at the April 26, 2005 hearing. We have Ms. Feazell's written statement of January 19, 2005, in which she states that relator "gave us written notification that he was quitting his job at Areway, Inc. to move to Florida because the roof of his house in Cleveland caved in under the weight of the snow."
 {¶ 35} At oral argument, counsel for Areway stated that it was Ms. Sedlak, who is fluent in English and Spanish, who printed the statement for relator to sign. Relator's affidavit conflicts with Areway's assertion that Ms. Sedlak printed the statement. Relator avers that Ms. Feazell "would not give me my check until I signed a paper she wrote." In any event, this magistrate need not determine who printed the statement. It appears to be undisputed that an Areway employee printed the statement for relator to sign.
 {¶ 36} The conflicting versions of what actually happened on December 30, 2004, when relator signed the statement, presented a factual question of credibility for the SHO to resolve. The SHO resolved the factual question against relator and in favor of Areway.
 {¶ 37} In resolving the conflict, the SHO was apparently persuaded by her finding that Areway "had provided comporting employment to the claimant for many weeks." Given that relator apparently took the position, as he has done so here, that Areway was motivated by an inability to provide him with alternative light duty employment, relator's employment at Areway from November 8 to December 30, 2004, undermines the accusation. The SHO could consider relator's return to work at Areway as a factor weighing against the credibility of his accusations.
 {¶ 38} Again, this court cannot reweigh the evidence. Also, there is no evidence that the SHO abused her discretion in weighing the evidence before her. Relator's disagreement with the SHO's factual finding does not constitute cause for this court to find an abuse of discretion.
 {¶ 39} The second issue is easily answered. R.C. 4123.511(E) provides for a discretionary administrative appeal from an order of an SHO. Clearly, the affidavits relator presented in support of his administrative appeal of the SHO's order did not require the commission to hear the appeal or even state a reason why the appeal was being refused. The commission's exercise of its discretion in refusing to hear the appeal cannot be challenged in this mandamus action.
 {¶ 40} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.