DECISION
 IN MANDAMUS ON OBJECTIONS TO MAGISTRATE'S DECISION {¶ 1} In this original action, relator, Robert Rutherford, seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him temporary total disability ("TTD") compensation and issue an order granting him TTD compensation for the period from January 20, 2003 through February 3, 2004.
 {¶ 2} Relator's claim arose from an industrial injury that occurred on April 30, 1997. At the time of injury, relator was employed as a route driver by Coca-Cola Enterprises, Inc. ("Coca-Cola"). Coca-Cola is a self-insured employer. Relator's claim was allowed for "lumbar sprain/strain; [and] mild central posterior herniation of the L5-S1 disc," and assigned claim No. 97-634339. On April 11, 2002, Dr. Alfred Kahn, III, an orthopedic surgeon, performed a left L5-S1 laminotomy, diskectomy, and foraminotomy. On July 18, 2002, Dr. Kahn noted that relator had completed his therapy and reached maximum medical improvement ("MMI"). Dr. Kahn was of the opinion that "this man will function well throughout his life as long as he is careful." On July 22, 2002, relator returned to work with a new employer.
 {¶ 3} Relator sought TTD compensation for the surgery, which was contested by Coca-Cola. On October 10, 2002, a staff hearing officer ("SHO") conducted a hearing and granted relator TTD compensation from April 11, 2002 to July 21, 2002.
 {¶ 4} On January 20, 2003, relator returned to Dr. Kahn for treatment after he bent over to tie his boot and suffered severe low back pain. Dr. Kahn diagnosed relator as having a possible reherniation of the L5-S1 disc. On January 27, 2003, relator underwent an MRI by Robert S. Lenobel, M.D. On February 12, 2003, relator again visited Dr. Kahn who noted:
 * * * This man is in having had an epidural through a transforaminal approach and he did not feel well at all afterwards and still hurts a lot. He does not want to get that repeated and I do not blame him. The patient wants to try a redo laminectomy because he has a disc extrusion at L5-S1 and I have told him I am certainly willing to try that, but I cannot make him promises. He knows that. I have told him he may well need a fusion. He understands that as well. * * * We will proceed with the decompression at his convenience. He will be scheduled for a redo L5-S1 laminectomy. Temporary total on him three months at this time.
Dr. Kahn submitted two C-9 forms to Coca-Cola. The first application requested authorization to perform the "redo" or second L5-S1 laminectomy. The second application was for retroactive authorization of an MRI and epidural steroid injection given to relator. Coca-Cola denied both requests.
 {¶ 5} On March 4, 2003, relator underwent the "redo" laminectomy. On March 7, 2003, relator filed a motion for authorization of his C9 requests and for TTD compensation with the commission. A district hearing officer ("DHO") granted relator's motion. Respondents appealed, and an SHO vacated the DHO's decision on August 18, 2003. The SHO held that "the `redo' laminectomy was not an emergency surgery and may not be causally related to the 04/30/1997, industrial injury." On October 1, 2003, the commission issued an order denying a third hearing.
 {¶ 6} Relator filed an action in mandamus in this court, assigned case No. 03AP-1225. The case was referred to a magistrate of this court. The magistrate's decision was subject to our review in 03AP-1225. In our decision, we noted that:
 * * * The magistrate concluded that the commission did not abuse its discretion in denying payment for relator's epidural steroidal injections, MRI, and the March 4, 2003 surgery, because relator failed to obtain prior authorization. However, the magistrate found the commission did abuse its discretion in denying the requested temporary total disability compensation because it did no address whether relator's current period of disability was causally related to the industrial injury, and that this court should issue a limited writ of mandamus ordering respondent-commission to vacate that part of its order.
 {¶ 7} On November 4, 2004, we adopted the magistrate's decision and granted a limited writ of mandamus ordering the commission to determine whether there was a causal relationship between relator's current disability and his allowed industrial injury. Subsequently, on January 13, 2005, an SHO vacated that portion of the August 18, 2003 order which had denied TTD compensation and ordered another hearing.
 {¶ 8} On July 7, 2003, while case No. 03AP-1225 was pending before this court and before our decision was released, relator filed a form C-86 in which he sought to have his claim allowed for degenerative disc disease. On July 16, 2003, Dr. Kahn issued a report recommending that relator undergo a spinal fusion and, on September 4, 2003, relator filed a motion for authorization for that surgery.
 {¶ 9} On October 6, 2003, at Coca-Cola's request, relator was examined by orthopedic surgeon, Bernard B. Bacevich, M.D. Dr. Bacevich issued a medical report that contained a number of opinions. As relevant to this appeal, Dr. Bacevich gave the following opinions:
 1. At the current time, I find no evidence of any continuing lumbar spine sprain/strain or mild central posterior disc herniation L5-S1. This man did develop recurrent herniation L5-S1 to the left following a bending over episode in January of 2003. Simple bending forward is an action that can cause lumbar discs to herniate. This man previously had reported an excellent result from the surgery carried out 04/11/02. Following successful lumbar disc surgery there is only a small chance of recurrent disc herniation at the same level and that would be about a 5% incidence. It is well-recognized that simple bending activities are a very common cause for disc herniations. Bending over to tie a shoe, bending over toe [sic] turn on a TV, bending over to pick up an object or coughing or sneezing are common causes of a disc herniation. With this man having a good result from the initial surgery 04/11/02, it is my opinion that this was a separate incident related to his bending over that occurred in January of 2003 which resulted in the recurrent disc herniation. Dr. Kahn described adequately removing the recurrent disc herniation but then Mr. Rutherford describes the coughing episode in the post/operative period that caused severe pains radiating down his left leg. It is my opinion that the disc re-prolapse demonstrated on the MRI of 08/27/03 relates to this coughing episode in the immediate post/operative period of time. It is my opinion that another disc fragment herniated through the surgical opening in the annulus where the disc had been removed by Dr. Kahn.
 2. With this injury occurring on 04/30/97 and the fact that the first MRI of October 9, 1998 showed degeneration of the disc with mild central herniation. It is my opinion that that degeneration did not occur from that injury. Disc degeneration is a common degenerative condition and as discs degenerate they will develop mild central disc herniation. Between the MRI of October 98 [sic] and the next one of 10/31/01, there was no reference to any progression of this degeneration. Even after the surgery in January of 2003 when the MRI was repeated on 08/27/03, there was still only mild disc height loss. Having only mild disc height loss, in my opinion, would not cause any current nerve root impingement.
 3. With the current MRI description of only mild disc height loss, I do not concur with Dr. Kahn that Mr. Rutherford requires an L5-S1 decompression and fusion anteriorly and posteriorly. This man's symptoms are primarily radicular symptoms in his leg which indicate nerve root compression. If is my opinion that this nerve root compression is not related to loss of disc height with foraminal narrowing but it is related to the re-prolapse of the disc as demonstrated on the 08/27/03 MRI.
 * * *
 5. His need for continuing medical care does not relate to complications of progressive disc space narrowing occurring from the surgery of 03/05/03. It is my opinion that the coughing episode in the immediate post/operative period was the cause of his re-prolapse of the L5-S1 disc and is the cause of his current severe radicular pain into his left leg.
 6. It is well-recognized that lumbar discs herniate with simple activities. In my 29-years of orthopaedic practice it was extremely common to see patients present with lumbar disc herniations with any type of forward bending such as to bend over to tie your shoe, bend over to [turn] on a TV or pick up a small object from the floor. Other common causes would be coughing or sneezing. Far more discs herniate from minor events which would be considered normal activities than discs herniating from major trauma. This shoe tying incident, in my opinion, was the cause of the disc herniation that occurred in January of 2003.
 {¶ 10} On October 16, 2003, a DHO held a hearing and subsequently allowed relator's additional claim for "degenerative disc disease L5-S1." Coca-Cola administratively appealed. On October 31, 2003, a second hearing was held on relator's motion for authorization of fusion surgery. Based upon Dr. Bacevich's report, the DHO denied relator's application for authorization of fusion surgery. Relator administratively appealed that decision.
 {¶ 11} On December 15, 2003, an SHO heard both appeals. The SHO granted relator's additional claim for degenerative disc disease. The SHO also vacated the October 31, 2003 order denying relator's motion for authorization of fusion surgery. The SHO relied upon Dr. Kahn's report to authorize the surgery.
 {¶ 12} On February 11, 2004, relator moved for TTD compensation beginning on February 4, 2004 and continuing. The following day, February 12, relator underwent fusion surgery.
 {¶ 13} On May 19, 2004, a DHO granted relator's February 11, 2004 motion for TTD compensation from February 4, 2004.[1] Coca-Cola administratively appealed the May 19, 2004 order.
 {¶ 14} On July 2, 2004, an SHO reviewed the DHO's order dated May 19, 2004 that granted TTD compensation from February 4, 2004. The SHO order states that the DHO order of May 19, 2004, which granted TTD compensation from February 4, 2004, was vacated.[2] However, the SHO went on to say that the application for TTD compensation from February 4, 2004 was granted. The SHO rejected Coca-Cola's assertion that relator's period of TTD was unrelated to his allowed industrial claim. In the order, the SHO indicated his belief that the commission had rejected Dr. Bacevich's opinion that relator's recurrent disc herniation was not causally related to his allowed industrial claim, but was the result of the January 2003 incident when relator felt back pain while tying his shoe. The SHO's order included the following language:
 * * * The Hearing Officer finds that the claim is currently allowed for the condition of herniated disc at L5-S1 and the Industrial Commission has rejected an opinion from Dr. Bacevich dated 10/09/2003 which concluded that the recurrent disc herniation was the result of an incident in January 2003.
 {¶ 15} On February 18, 2005, in response to our November 4, 2004 issuance of the limited writ in 03AP-1225, an SHO conducted a hearing on the question of whether relator's request for TTD compensation from January 20, 2003 through February 3, 2004 was causally related to his industrial injury of April 30, 1997. The SHO order contains the following operative language:
 The Staff Hearing Officer denies the injured worker's request for temporary total disability compensation for the period of 01/20/2003 through 02/03/2004. The Staff Hearing Officer does not find a causal connection between the recurrent DISC HERNIATION and the industrial injury of date of 04/30/1997.
 * * *
 The Staff Hearing Officer finds that the injured worker has not sustained the burden of proof in establishing the causal connection for this period of disability as indicated under case law, State ex rel. Blanton vs. Industrial Commission, 99 OH St. 3d 238 law.
 This order is based upon the case law cited above, the lack of the medical documentation on file as well as the report of Dr. Bacevich dated 10/09/2003.
(Emphasis sic.) Relying upon State ex rel. Blanton v. Indus. Comm.,99 Ohio St.3d 238, 2003-Ohio-3271, the SHO observed that relator's failure to seek medical treatment from July 22, 2002 to January 20, 2003, indicated that his recurrent disc herniation was not causally related to his industrial injury. Relator's administrative appeal from the SHO's order was denied.
 {¶ 16} On September 15, 2005, relator filed the within mandamus action. We referred the case to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth Appellate District. The magistrate issued a decision, including findings of fact and conclusions of law and recommended that this court grant the requested writ of mandamus. (Attached as Appendix A.) The magistrate held: "(1) lack of medical treatment for the period prior to the recurrent disc herniation is not some evidence that the recurrent disc herniation is not causally connected to the industrial injury, and (2) because the commission had previously rejected Dr. Bacevich's report, under State ex rel. Zamora v.Indus. Comm. (1989), 45 Ohio St.3d 17, Dr. Bacevich's report should have been eliminated from further evidentiary consideration." (Magistrate's decision at 15-16.)
 {¶ 17} The magistrate concluded that while it is common knowledge sprains and strains heal over time, and therefore, it would be reasonable to conclude that a considerable period of time between treatments of injuries indicates complete healing from the first injury, that is not true in all cases. The magistrate stated:
 * * * While relator did return to work on July 22, 2002, at a new job, the post-surgical risks following such surgery is clearly not within the realm of common knowledge or even common sense. The likelihood of developing a recurrent herniation and its causes is clearly not subject to the realm of common knowledge.
(Magistrate's Decision, at 19-20.) Accordingly, the magistrate found that the SHO erred in applying Blanton to the facts of this case. The magistrate found that relator had no plain and adequate remedy at law in the court of common pleas and, is therefore, entitled to a writ of mandamus.
 {¶ 18} Respondents object to the magistrate's decision on three grounds: (1) that the magistrate erred in finding that relator did not have a plain and adequate remedy at law in the court of common pleas; (2) the opinions contained in Dr. Bacevich's report are severable and constitute some evidence upon which the commission could rely; and (3) the magistrate erroneously determined that Blanton is distinguishable from this case. For the following reasons, we overrule respondents' first objection, but sustain the second and third objections.
 {¶ 19} In order to be entitled to a writ of mandamus, relator must show that he has a legal right to relief from the determination of the commission and that the commission has a legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. Relator must show that the commission abused its discretion by entering an order that is not supported by the evidence of record.State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. However, where some evidence supports the commission's order there was no abuse of discretion and mandamus will not lie. State ex rel. Lewis v. DiamondFoundry Co. (1987), 29 Ohio St.3d 56.
 {¶ 20} Respondents' first objection was adequately briefed and argued before the magistrate. We agree with the magistrate that relator had no adequate remedy at law by appeal to the court of common pleas. R.C.4123.512(A) provides that a claimant or employer "may appeal an order of the industrial commission * * * other than a decision as to the extent of disability to the court of common pleas." The magistrate correctly noted that an appeal to the court of common pleas is limited to the claimant's right to participate in the workers' compensation fund. SeeFelty v. AT T Technologies, Inc. (1992), 65 Ohio St.3d 234. Relator's right to participate and receive TTD compensation is not at issue here. Instead, the issue herein is whether relator's recurrent disc herniation is causally connected to his original industrial injury. Therefore, relator does not have an adequate remedy at law by way of appeal to the court of common pleas. Respondents' first objection is overruled.
 {¶ 21} Respondents' second objection turns on whether the commission rejected Dr. Bacevich's report in its entirety when allowing relator's claim for degenerative disc disease or whether the medical opinions are severable and the commission did not reject the report in its entirety. The commission may not rely upon a medical report that it had previously rejected. Zamora; State ex rel. Jeep Corp. v. Indus. Comm. (1992),64 Ohio St.3d 378, 381. However, despite the rule in Zamora, opinions expressed in medical reports may be severable. State ex rel. Verbanek v.Indus. Comm. (1995), 73 Ohio St.3d 562, 563. In State ex rel. Fries v.Indus Comm., Franklin App. No. 01AP-721, 2002-Ohio-3252, at ¶ 9, we held that "the concept of severability underpins the well-settled view that the commission may reject the conclusion of a rehabilitation report and draw its own conclusion from the same medical information." Accordingly, we must determine whether the commission rejected all of Dr. Bacevich's report, or only specific portions thereof.
 {¶ 22} Relator requested and was granted an additional allowance for degenerative disc disease and authorization of fusion surgery. Implicit in the additional allowance was that the commission rejected Dr. Bacevich's opinion that degenerative disc disease was not causally related to relator's allowed industrial injury and that fusion surgery was not necessary. If that were the only opinion offered by Dr. Bacevich, the report could not have been used by the commission and our inquiry would end. However, Dr. Bacevich's report also contained opinions regarding relator's other allowed conditions; opinions that were not part of the allowance of relator's claim for TTD compensation. Those other opinions were unaffected by the commission order allowing the claim for degenerative disc disease.
 {¶ 23} Dr. Bacevich's report contains ten separate opinions on different aspects of relator's condition, including the need for various treatments and surgeries, the cause of relator's degenerative disc disease, recurrent disc herniation, and disc reprolapse. Pertinent to the current case is Dr. Bacevich's determination that relator's recurrent disc herniation was not a result of his industrial injury but, instead, was caused by the isolated incident of bending over to tie his shoe. The medical opinion regarding relator's herniated disc contained in paragraph six of Dr. Bacevich's report did not address relator's TTD claim. Because the only issue before it was relator's request to allow his claim for TTD, the commission had no occasion to address relator's herniated disc condition set out in paragraph six of Dr. Bacevich's report. Therefore, the commission neither accepted nor rejected that particular portion of the report. Because other paragraphs of Dr. Bacevich's report address relator's medical conditions independent of the issue of fusion surgery or degenerative disc disease, we find that they are severable from the rest of the report and may be considered by the commission as evidence. Verbanek, supra. Accordingly, we are unable to agree with the magistrate's reasoning. Respondents' second objection to the magistrate's decision is sustained.
 {¶ 24} Finally, respondents argue that Blanton applies to the facts herein and, as a result, relator is not entitled to TTD compensation. The magistrate based his determination upon the fact that here, unlike the circumstances in Blanton, there was no medical evidence to support the SHO's finding that relator's recurrent disc herniation was not causally connected to his initial industrial injury. The magistrate noted that in Blanton, the claim that the injured employee's pain was caused by a re-aggravation of her allowed injury claim was supported by some medical evidence while in relator's case," [c]learly, the SHO lacks the medical expertise to make such a finding." (Magistrate's decision, at 20.) Therefore, the magistrate reasoned that Blanton did not support the SHO's finding.
 {¶ 25} We are unable to agree with the magistrate's conclusion thatBlanton is inapplicable to the facts of this case. In light of our holding that Dr. Bacevich's report contains severable medical opinions, those portions of the report not implicitly rejected by the grant of relator's application to allow his claim for degenerative disc disease may be considered some evidence upon which the commission could rely. Relator's lack of medical treatment, in conjunction with Dr. Bacevich's opinion that his recurrent disc herniation was caused by the intervening event of relator bending over to tie his shoe, brings this case within the rule of Blanton. Accordingly, we sustain respondents' third objection.
 {¶ 26} Pursuant to Civ.R. 53(E)(4), this court has conducted a full review of the magistrate's decision. For the reasons stated, we sustain respondents' second and third objections to the magistrate's decision. The requested writ of mandamus is denied.
Objections sustained in part and overruled in part; writ of mandamusdenied.
 KLATT and DESHLER, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
 (APPENDIX A) MAGISTRATE'S DECISION IN MANDAMUS {¶ 27} In this original action, relator, Robert Rutherford, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that was entered pursuant to this court's writ of mandamus issued in a prior action and that denied him temporary total disability ("TTD") compensation from January 20, 2003 through February 3, 2004, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 28} 1. On April 30, 1997, relator sustained an industrial injury while employed as a route driver for respondent, Coca-Cola Enterprises, Inc. ("Coca-Cola"), a self-insured employer under Ohio's workers' compensation laws. In his application for workers' compensation benefits, relator stated that he injured his back as he was pulling up on a bay door and the door "stuck halfway[.]"
 {¶ 29} 2. The industrial claim was initially for "lumbar sprain/strain; mild central posterior herniation of the L5-S1 disc" and was assigned claim No. 97-634339.
 {¶ 30} 3. On April 11, 2002, relator underwent a left L5-S1 laminotomy, diskectomy, foraminotomy which was performed by orthopedic surgeon, Alfred Kahn, III, M.D.
 {¶ 31} 4. A July 18, 2002 office note from Dr. Kahn states:
 * * * He has finished his therapy and is doing well. He has a new job lined up starting Monday. He will be at Maximum Medical Improvement at that time. I will check him on an as needed basis. He knows that he has to be careful about his lifting, but by and large, I think this man will function well throughout his life as long as he is careful.
 {¶ 32} 5. Apparently, relator returned to work at his new job with a different employer on Monday, July 22, 2002.
 {¶ 33} 6. Coca-Cola contested relator's request for TTD compensation relating to the April 11, 2002 surgery. Ultimately, following an October 10, 2002 hearing, a staff hearing officer ("SHO") awarded relator TTD compensation from April 11, 2002, to July 21, 2002.
 {¶ 34} 7. On January 20, 2003, approximately six months after he had returned to work at his new job, relator was seen by Dr. Kahn, who wrote:
 This man is in for evaluation having simply bent over to tie his boot 9 days ago. He developed a very sharp low back pain that went into the buttocks. This has been present since. He tried a Medrol Dose Pak. He has been on Skelaxin and he is still having pain. The patient is in now for evaluation. * * *
 * * * His physical examination reveals markedly positive left straight leg raising at 30 degrees with a normal neurological, except for mild left S1 sensory deficit.
 DIAGNOSIS: Possible re-herniation L5-S1 disc.
 PLAN: The patient is going to get an epidural steroid and an MRI. I am keeping him off work. We will refill some Ultracet and Skelaxin for him. I will see him in perhaps 10 days. Temporary total two weeks at this time.
 {¶ 35} 8. On January 27, 2003, relator underwent an MRI of the lumbar spine. That same day, Robert S. Lenobel, M.D., issued his MRI finding:
 At L5-S1, left hemilaminectomy, chronic mild disc degeneration and a moderate sized left central disc extrusion mildly displacing the left S1 root but not flattening the thecal sac. The diameter of central canal at the lumbosacral level is relatively wide. A small amount of contrast enhancement is present along the posterior margin of the disc extrusion and partially surrounds the left S1 root.
 {¶ 36} 9. On February 12, 2003, relator was again seen by Dr. Kahn, who wrote:
 * * * This man is in having had an epidural through a transforaminal approach and he did not feel well at all afterwards and still hurts a lot. He does not want to get that repeated and I do not blame him. The patient wants to try a redo laminectomy because he has a disc extrusion at L5-S1 and I have told him I am certainly willing to try that, but I cannot make him promises. He knows that. I have told him he may well need a fusion. He understands that as well. * * * We will proceed with the decompression at his convenience. He will be scheduled for a redo L5-S1 laminectomy. Temporary total on him three months at this time.
 {¶ 37} 10. On February 20, 2003, on Form C84, Dr. Kahn certified a period of TTD beginning January 10, 2003, to an estimated return-to-work date of May 4, 2003.
 {¶ 38} 11. On March 5, 2003, relator underwent a "Redo surgery left L5-S1 laminotomy, diskectomy, foraminotomy[,]" which was performed by Dr. Kahn. In his operative report, "Recurrent disk herniation left L5-S1" is listed by Dr. Kahn as both the pre-operative and post-operative diagnoses.
 {¶ 39} 12. In his operative report of March 5, 2003, Dr. Kahn further wrote:
 INDICATIONS FOR SURGERY: This patient had a previous laminotomy approximately a year ago. He had done well, returned to driving a pick-up truck. Approximately four to six weeks ago he had recurrence of severe pain after bending over to tie his shoes. The patient was tried on conservative treatment including medicine, epidural steroids, et cetera. He failed to improve and a MRI showed a recurrent disk at L5-S1 on the left. As a result, the patient is admitted at this time for elective decompression after thorough explanation of the risks and benefits. The patient realizes that he may well end up needing to have a fusion at this level particularly if he continues to do heavy work.
 {¶ 40} 13. On March 7, 2003, relator moved for TTD compensation beginning January 20, 2003, based upon Dr. Kahn's certification. Relator also moved that Coca-Cola be ordered to pay for the March 5, 2003 surgery, the epidural steroid injections, and the MRI.
 {¶ 41} 14. Following a July 9, 2003 hearing, a DHO issued an order awarding TTD compensation beginning January 20, 2003, and ordering Coca-Cola to pay for the March 5, 2003 surgery, the epidural steroid injections, and the MRI.
 {¶ 42} 15. Coca-Cola administratively appealed the DHO's order of July 9, 2003. Following an August 18, 2003 hearing, an SHO issued an order that vacates the DHO's order of July 9, 2003. The SHO's order of August 18, 2003, denied authorization for the March 5, 2003 surgery on grounds that relator had failed to obtain pre-authorization for non-emergency surgery. The SHO also denied TTD compensation explaining:
 The Staff Hearing Officer further finds that temporary total disability compensation for the period from 01/20/2003 to 09/02/2003, is denied as it is premised upon a period of disability related to an unauthorized surgical procedure.
 {¶ 43} 16. On December 12, 2003, relator filed in this court a mandamus action which was assigned case No. 03AP-1225. In that action, relator challenged the August 18, 2003 decision of the SHO.
 {¶ 44} 17. On July 28, 2004, a magistrate of this court issued a magistrate's decision in case No. 03AP-1225.
 {¶ 45} 18. On October 28, 2004, this court rendered its decision in case No. 03AP-1225, stating:
 * * * The magistrate concluded that the commission did not abuse its discretion in denying payment for relator's epidural steroidal injections, MRI, and the March 4, 2003 surgery, because relator failed to obtain prior authorization. However, the magistrate found the commission did abuse its discretion in denying the requested temporary total disability compensation because it did not address whether relator's current period of disability was causally related to the industrial injury, and that this court should issue a limited writ of mandamus ordering respondent-commission to vacate that part of its order.
 {¶ 46} 19. On November 4, 2004, this court filed its judgment entry stating:
 For the reasons stated in the decision of this court rendered herein on October 28, 2004, the objections to the decision of the magistrate are overruled, the decision of the magistrate is approved and adopted by the court as its own, and it is the judgment and order of this court that a limited writ of mandamus issue against respondent Industrial Commission of Ohio to vacate that portion of its order which denied payment of temporary total disability compensation and remand the matter to the commission for a determination of whether or not there is a causal relationship between the current period of disability and the industrial injury based upon analysis of the applicable law including, but not limited to State ex rel. Blanton v. Indus. Comm., 99 Ohio St.3d 238. * * *
 {¶ 47} 20. Earlier, on June 17, 2003, Dr. Kahn wrote:
 Robert Rutherford is a patient under my care at the present time. The patient has undergone a left L5-S1 laminotomy, discectomy and foraminotomy on April 11, 2002 for L5-S1 disc herniation, and redo surgery consisting of left L5-S1 laminotomy, discectomy and foraminotomy for recurrent L5-S1 disc herniation on March 4, 2003. These disc herniations were proven by an MRI study of October 31, 2001, CT/myelography of February 11, 2002, and an MRI scan of January 27, 2003. These studies also show the L5-S1 disc space to be degenerative. * * *
 It is my opinion, within reasonable medical certainty, the condition of L5-S1 degenerative disc disease is directly and causally related to the industrial injury of April 30, 1997 and the industrial claim should be amended to include same. It is common for patients who sustain trauma to the spine to develop degenerative disc disease more rapidly than a person who does not sustain trauma to the spine and I believe this has happened in Mr. Rutherford's case. My opinion is based on the patient's history, physical examinations, diagnostic studies and my experience as a spine specialist.
 {¶ 48} 21. On July 7, 2003, citing Dr. Kahn's June 17, 2003 report, relator moved for an additional claim allowance.
 {¶ 49} 22. On July 16, 2003, Dr. Kahn wrote:
 This man is in having increasingly significant pain. He has an instability. His leg gives way on him and unfortunately having had the two decompressions he just simply cannot get well. He needs to have an L5-S1 decompression and fusion anteriorly and posteriorly. * * * We will request permission at this point for the surgery. * * *
 {¶ 50} 23. On August 27, 2003, relator underwent yet another MRI. Steven J. Perlmann, M.D., reported his MRI findings:
 L5-S1 disc is again shown to be desiccated with mild disc height loss. Left hemilaminectomy defect is redemonstrated. Left paracentral disc reprolapse impresses gently on the proximal left S1 nerve root. More centrally, enhancing granulation tissue is evident without extrinsic compression of the thecal sac or right S1 nerve root. Enhancing curettage defect is noted. Articular facets are mildly hypertrophic with foraminal patency.
 {¶ 51} 24. On September 4, 2003, relator moved for authorization of fusion surgery at L5-S1 based upon Dr. Kahn's reports.
 {¶ 52} 25. Relator's July 7, 2003 motion for an additional claim allowance and his September 4, 2003 motion for authorization of fusion surgery prompted Coca-Cola to have relator examined by orthopedic surgeon, Bernard B. Bacevich, M.D., on October 6, 2003. On October 9, 2003, Dr. Bacevich reported:
 1. At the current time, I find no evidence of any continuing lumbar spine sprain/strain or mild central posterior disc herniation L5-S1. This man did develop recurrent herniation L5-S1 to the left following a bending over episode in January of 2003. Simple bending forward is an action that can cause lumbar discs to herniate. This man previously had reported an excellent result from the surgery carried out 04/11/02. Following successful lumbar disc surgery there is only a small chance of recurrent disc herniation at the same level and that would be about a 5% incidence. It is well-recognized that simple bending activities are a very common cause for disc herniations. Bending over to tie a shoe, bending over toe turn on a TV, bending over to pick up an object or coughing or sneezing are common causes of a disc herniation. With this man having a good result from the initial surgery 04/11/02, it is my opinion that this was a separate incident related to his bending over that occurred in January of 2003 which resulted in the recurrent disc herniation. Dr. Kahn described adequately removing the recurrent disc herniation but then Mr. Rutherford describes the coughing episode in the post/operative period that caused severe pains radiating down his left leg. It is my opinion that the disc re-prolapse demonstrated on the MRI of 08/27/03 relates to this coughing episode in the immediate post/operative period of time. It is my opinion that another disc fragment herniated through the surgical opening in the annulus where the disc had been removed by Dr. Kahn.
 When this man underwent the initial MRI October, 1998, he did have degeneration L5-S1 disc with mild central disc herniation. Mild central disc herniation occurs when there is an early degenerative disc condition developing. The second MRI of 10/31/01 showed no progression. Again, there was desiccation with mild bulging. The left-sided disc herniation was not demonstrated on testing until he underwent the CT/myelogram on 02/11/02. This disc was confirmed at the time of surgery and was treated adequately with good results and by 07/18/02 Dr. Kahn released him to return only p.r.n.
 2. With this injury occurring on 04/30/97 and the fact that the first MRI of October 9, 1998 showed degeneration of the disc with mild central herniation. It is my opinion that that degeneration did not occur from that injury. Disc degeneration is a common degenerative condition and as discs degenerate they will develop mild central disc herniation. Between the MRI of October 98 and the next one of 10/31/01, there was no reference to any progression of this degeneration. Even after the surgery in January of 2003 when the MRI was repeated on 08/27/03, there was still only mild disc height loss. Having only mild disc height loss, in my opinion, would not cause any current nerve root impingement.
 3. With the current MRI description of only mild disc height loss, I do not concur with Dr. Kahn that Mr. Rutherford requires an L5-S1 decompression and fusion anteriorly and posteriorly. This man's symptoms are primarily radicular symptoms in his leg which indicate nerve root compression. It is my opinion that this nerve root compression is not related to loss of disc height with foraminal narrowing but it is related to the re-prolapse of the disc as demonstrated on the 08/27/03 MRI.
 4. With this man having primarily radicular leg symptoms and having evidence of a left disc re-prolapse at L5-S1, it is my opinion that a microscopic discectomy and neurolysis of the nerve root would be more appropriate than the anterior and posterior fusions.
 5. His need for continuing medical care does not relate to complications of progressive disc space narrowing occurring from the surgery of 03/05/03. It is my opinion that the coughing episode in the immediate post/operative period was the cause of his re-prolapse of the L5-S1 disc and is the cause of his current severe radicular pain into his left leg.
 6. It is well-recognized that lumbar discs herniate with simple activities. In my 29-years of orthopaedic practice it was extremely common to see patients present with lumbar disc herniations with any type of forward bending such as to bend over to tie your shoe, bend over to [turn] on a TV or pick up a small object from the floor. Other common causes would be coughing or sneezing. Far more discs herniate from minor events which would be considered normal activities than discs herniating from major trauma. This shoe tying incident, in my opinion, was the cause of the disc herniation that occurred in January of 2003.
 7. He is currently unable to return to work due to the continued severe left leg pain which was unrelieved with the surgery of 03/05/03. His inability to work does not relate to his original claim conditions.
 8. From the allowed conditions, he is at MMI.
 9. I would place permanent restrictions on his work activities and avoid prolonged hours driving in a truck or doing any strenuous bending or lifting or twisting at the waist.
 10. He does not need treatment for the allowed conditions of lumbar sprain/strain and mild central disc herniation. He needs treatment due to the lack of response to surgery for a disc herniation which occurred in January of 2003.
 {¶ 53} 26. Following an October 16, 2003 hearing, a DHO issued an order additionally allowing the claim for "degenerative disc disease L5-S1." Coca-Cola administratively appealed.
 {¶ 54} 27. Following an October 31, 2003 hearing, a DHO issued an order denying relator's motion for authorization of fusion surgery. The decision was based upon the October 9, 2003 report of Dr. Bacevich. Relator administratively appealed.
 {¶ 55} 28. On December 15, 2003, an SHO heard the administrative appeals from the DHO orders of October 16 and October 31, 2003. The SHO issued separate orders.
 {¶ 56} 29. One SHO order of December 15, 2003, modifies the DHO's order of October 16, 2003, but nevertheless grants an additional claim allowance for degenerative disc disease at L5-S1.
 {¶ 57} 30. The other SHO's order of December 15, 2003, vacates the DHO's order of October 31, 2003, and authorizes lumbar fusion surgery based upon the reports of Dr. Kahn.
 {¶ 58} 31. On February 12, 2004, relator underwent the fusion surgery which had been approved by the SHO's order of December 15, 2003.
 {¶ 59} 32. One day earlier, on February 11, 2004, relator moved for TTD compensation beginning February 4, 2004.
 {¶ 60} 33. Following a May 19, 2004 hearing, a DHO issued an order awarding TTD compensation beginning February 4, 2004. Coca-Cola administratively appealed the DHO's order of May 19, 2004.
 {¶ 61} 34. Following a July 2, 2004 hearing, an SHO issued an order that vacates the DHO's order of May 19, 2004. The SHO's order of July 2, 2004 awards TTD compensation beginning February 4, 2004, and explains in part:
 The Hearing Officer rejects the employer's argument that the period of disability is the result of non-allowed conditions as the operative report found a recurrent disc herniation which is a separate and distinct condition which is not allowed in the claim. The Hearing Officer finds that the claim is currently allowed for the condition of herniated disc at L5-S1 and the Industrial Commission has rejected an opinion from Dr. Bacevich dated 10/09/2003 which concluded that the recurrent disc herniation was the result of an incident in January 2003.
 {¶ 62} 35. As previously noted, on November 4, 2004, this court issued a writ of mandamus in case No. 03AP-1225.
 {¶ 63} 36. Pursuant to this court's November 4, 2004 judgment, on January 13, 2005, an SHO mailed an order that vacates the SHO's order of August 18, 2003, to the extent that it denies TTD compensation. It was further ordered that the issue of TTD compensation be heard by another SHO from the appeal of the DHO's order of July 9, 2003.
 {¶ 64} 37. Following a February 18, 2005 hearing, an SHO issued an order stating:
 The order of the District Hearing Officer, from the hearing dated 07/09/2003, is vacated.
 This hearing is scheduled per an order of the Industrial Commission mailed 01/13/2005 wherein it is ordered that an appeal hearing be scheduled before a Staff Hearing Officer regarding the employer's appeal filed 07/23/2003 from the order of the District Hearing Officer dated 07/09/2003 solely on the issue of temporary total disability compensation as directed by the court in the case cite of State ex. rel. Robert Rutherford v. Industrial Commission, case number 03AP1225.
 The Staff Hearing Officer herein places an order on the requested period of temporary total from 01/20/2003 through 02/03/2004.
 This Staff Hearing Officer denies the injured worker's request for temporary total disability compensation for the period of 01/20/2003 through 02/03/2004. The Staff Hearing Officer does not find a causal connection between the recurrent DISC HERNIATION and the industrial injury of date of 04/30/1997. The Staff Hearing Officer finds that the injured worker did not receive any medical treatment for the period from 07/22/2002 through 01/20/2003. The Staff Hearing Officer notes that the injured worker underwent re-do surgery for the recurrent herniation at the L4-S1 on 03/15/2003. The Staff Hearing Officer notes that this surgery has been denied by Industrial Commission order and the court decision.
 The Staff Hearing Officer finds that the injured worker's request for disability from 01/20/2003 through 02/03/2004 is not causally related to the industrial injury of date being 04/30/1997.
 The Staff Hearing Officer finds that the injured worker has not sustained the burden of proof in establishing the causal connection for this period of disability as indicated under case law, State ex rel. Blanton vs. Industrial Commission, 99OH St. 3d 238 law.
 This order is based upon the case law cited above, the lack of the medical documentation on file as well as the report of Dr. Bacevich dated 10/09/2003.
 {¶ 65} 38. On March 23, 2005, another SHO refused relator's administrative appeal from the SHO's order of February 18, 2005.
 {¶ 66} 39. On September 15, 2005, relator, Robert Rutherford, filed this mandamus action.
Conclusions of Law:
 {¶ 67} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 68} Preliminarily, the issue is whether relator has a plain and adequate remedy at law by way of an appeal to a court of common pleas.[3]
 {¶ 69} A final decision of the commission involving a claimant's right to participate or to continue to participate in the state insurance fund may be appealed to a court of common pleas. R.C. 4123.512(A);Afrates v. Lorain (1992), 63 Ohio St.3d 22. A commission decision does not determine an employee's right to participate in the state insurance fund unless the decision finalizes the allowance or disallowance of the employee's claim. State ex rel. Evans v. Indus. Comm. (1992),64 Ohio St.3d 236.
 {¶ 70} R.C. 4123.512(A) provides that a claimant or an employer "may appeal an order of the industrial commission * * * in any injury or occupational disease case, other than a decision as to the extent of disability to the court of common pleas." The Supreme Court of Ohio interprets this provision narrowly, resolving that the only decisions reviewable on appeal under R.C. 4123.512 in a court of common pleas are those decisions involving a claimant's right to participate or to continue to participate in the state insurance fund. Felty v. AT TTechnologies, Inc. (1992), 65 Ohio St.3d 234.
 {¶ 71} According to Coca-Cola, the SHO's order of February 8, 2005, denies relator the right to participate for a recurrent disc herniation at L5-S1, and, on that basis, denies relator TTD compensation related to the recurrent disc herniation. Coca-Cola points out that the SHO did "not find a causal connection between the recurrent DISC HERNIATION and the industrial injury[.]"
 {¶ 72} The magistrate disagrees with Coca-Cola's argument.
 {¶ 73} To begin, the SHO's order of February 18, 2005, was an adjudication of relator's March 7, 2003 motion for TTD compensation based upon Dr. Kahn's C84 certifications. Dr. Kahn's certification of TTD relates to the need for re-do surgery that was performed by Dr. Kahn on March 5, 2003. At the time of Dr. Kahn's certification, the industrial claim was allowed for "mild central posterior herniation of the L5-S1 disc[,]" even though relator had earlier undergone surgery to repair that condition on April 11, 2002.
 {¶ 74} Relator did not seek an additional claim allowance to support his request for TTD compensation related to the re-do surgery, and the SHO's order of February 18, 2005, does not purport in any way to modify or terminate the claim allowance for "mild central posterior herniation of the L5-S1 disc[.]" The SHO's order of February 18, 2005, simply denies TTD compensation because the SHO found that the recurrent disc herniation is not causally related to the industrial injury.
 {¶ 75} Coca-Cola seems to suggest that a commission determination of causation as to disability necessarily determines a right to participate. Coca-Cola's suggestion is incorrect. The SHO's order of February 18, 2005, determines that the period of disability relating to the need for re-do surgery is not causally connected to any existing allowance of a claim. However, that determination does not undermine or terminate the claim allowances.
 {¶ 76} Again, relator never requested that the claim be additionally allowed for a recurrent disc herniation as a prerequisite for TTD compensation. Relator's request for TTD compensation necessarily presumed that the existing claim allowances supported the disability claim. That the SHO's order of February 18, 2005, can be read to be a rejection of relator's presumption does not result in a denial of a right to participate.
 {¶ 77} Accordingly, this mandamus action is clearly not barred by a plain and adequate remedy at law by way of an appeal to a common pleas court.
 {¶ 78} Turning to the main issues of this case, the SHO's order of February 18, 2005, denies TTD compensation for the period January 20, 2003, through February 3, 2004, based upon a finding that the recurrent disc herniation that led to the March 5, 2003 re-do surgery is not causally connected to the industrial injury. In support of his finding that causation is lacking, the SHO stated two grounds: (1) the lack of medical treatment for the period July 22, 2002, to January 20, 2003, and (2) Dr. Bacevich's report.
 {¶ 79} Thus, two issues are presented: (1) whether the lack of medical treatment for the period July 22, 2002, to January 20, 2003, can support a finding that the recurrent disc herniation is not causally connected to the industrial injury, and (2) whether Dr. Bacevich's report can constitute some evidence to support a finding that a causal connection is absent.
 {¶ 80} The magistrate finds: (1) lack of medical treatment for the period prior to the recurrent disc herniation is not some evidence that the recurrent disc herniation is not causally connected to the industrial injury, and (2) because the commission had previously rejected Dr. Bacevich's report, under State ex rel. Zamora v. Indus.Comm. (1989), 45 Ohio St.3d 17, Dr. Bacevich's report should have been eliminated from further evidentiary consideration.
 {¶ 81} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 82} Turning to the first issue, the SHO cited State ex rel. Blantonv. Indus. Comm., 99 Ohio St.3d 238, 2003-Ohio-3271, to support his finding that the lack of medical treatment for the period July 22, 2002, through January 20, 2003, is evidence of a lack of a causal connection between the recurrent disc herniation and the industrial injury. The SHO did not explain how Blanton supports his finding.
 {¶ 83} In Blanton, the claimant, Patricia E. Blanton ("Blanton"), tripped over a floor mat at work and strained her back. The injury occurred on May 17, 1998, and, apparently, the claim was allowed for a lumbar sprain and strain. Blanton was treated by a chiropractor on May 21 and 28, 1998. She had no further treatment and missed no time from work.
 {¶ 84} On January 30 or 31, 1999, Blanton was bending over to retrieve house slippers when she experienced severe low back pain. Blanton returned to her chiropractor, Dr. Flerchinger, complaining of pain-induced nausea and inability to stand straight or raise her head. Blanton sought to have her treatment subsequent to the January incident paid for in her workers' compensation claim. The employer objected.
 {¶ 85} Dr. Flerchinger wrote:
 "DISCUSSION: Due to the fact that this individual has not had other known traumas or accidents know[n] to me, I believe, with reasonable medical certainty, that the low back pain which occurred on January 30th is in fact a re-aggravation of the original injury which occurred 5-17-98. Factors predisposing this are: 1) No prior history of low back pain, 2) Incompletion of care initiated in May of 1998, 3) As a complicating factor, disc degeneration at L4-L5, L5-S1 and osteoarthritis."
Id. at ¶ 15.
 {¶ 86} Denying Blanton's request for payment of fee bills, a DHO explained:
 "Fee bills for treatment rendered by Dr. Flerchinger from 02/01/1999 to present are denied as not causally related to the 05/17/1998 industrial injury. When the industrial injury occurred on 05/17/1998, the claimant had only two (2) treatments from Dr. Flerchinger on 05/21/1998 and 05/28/1998. She missed no time from work. Then on 02/01/1999, she sought further treatment from Dr. Flerchinger. The occasion that the claimant sought further treatment was that she reinjured her back while at home, bending over to put on her slippers. At that point, she sought ongoing continuous treatment * * * The District Hearing Officer finds the incident at home * * * to be an intervening and superseding incident to the one in which she tripped on a rug walking to her office. Therefore, the District Hearing Officer denies the payment of treatment from 02/01/1999 to present as not causally related to the 05/17/1998 industrial injury * * *"
Id. at ¶ 17.
 {¶ 87} The DHO's order in Blanton was administratively affirmed.
 {¶ 88} In Blanton, the court held that the commission properly considered Dr. Flerchinger's report but simply rejected its conclusion based on the commission's own view of the circumstances of the injuries. The sole issue was whether that was an abuse of discretion. Finding that the commission did not abuse its discretion, the Blanton court explained:
 The commission is the sole evaluator of the evidence before it. State ex rel. Burley v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18, 31 OBR 70, 508 N.E.2d 936. Here, the commission's decision hinged on two things: claimant's prior medical history and Dr. Flerchinger's reference to a specific precipitating incident in late January 1999. As to the former, claimant's industrial injury occurred on May 17, 1998. She had only two treatments — four and eleven days after the injury — and sought no further medical attention. She also missed no time from work. From this, the commission could logically conclude that claimant's lumbar sprain and strain had timely healed.
 This conclusion, in turn, ties into the second factor noted above. Claimant's renewed back pain can be linked to an identifiable occurrence after the industrial injury. Claimant questions how the mere act of bending over could bring on back pain unless something else was wrong beforehand. That something else, however, is not necessarily the claimant's industrial injury. Twice Dr. Flerchinger referred to "disc degeneration at the L4-L5, L5-S1 levels with osteoarthritis at the L4-L5 levels," and on page two of his report, he specifically lists those conditions as "a complicating factor." Neither of those conditions is allowed in the claim. While the mention of these conditions did not disqualify the report from consideration, it did give the commission reason to question the report's conclusion.
 Dr. Flerchinger indeed characterizes the January 1999 onset of pain as a reaggravation of her industrial injury, and, as claimant argues, this is some evidence of causal relationship. The existence of those elements listed above, however, ultimately defeats claimant's argument. The report discusses evidence capable of two interpretations, and, where that occurs, the commission does not abuse its discretion in choosing one over the other. The commission did not abuse its discretion in finding that claimant did not sustain her burden.
Id. at ¶ 24-26.
 {¶ 89} Thus, in Blanton, the commission validly explained how the lack of medical treatment and Dr. Flerchinger's mention of a non-allowed condition as a complicating factor led the commission to discredit Dr. Flerchinger's opinion that the low back pain on January 30th was a reaggravation of the original injury.
 {¶ 90} In the instant case, relator returned to work at a new job with a different employer on July 22, 2002, after recuperating from the back surgery performed by Dr. Kahn on April 11, 2002. In a July 18, 2002 office note, Dr. Kahn stated that relator "has finished his therapy and is doing well[,]" but also warned "[h]e knows that he has to be careful about his lifting[.]" Relator apparently worked at his new job without incident until January 2003, when, at home, he simply bent over to tie his boot and developed very sharp low back pain that went into his buttocks.
 {¶ 91} On January 27, 2003, relator underwent an MRI of the lumbar spine which showed undisputedly a "moderate sized left central disc extrusion mildly displacing the left S1 root[.]" Based upon the MRI, Dr. Kahn recommended a re-do back surgery, which he performed on March 5, 2003, but without pre-authorization. On a C84 dated February 20, 2003, Dr. Kahn certified a period of TTD beginning January 10, 2003, and beyond the surgery date.
 {¶ 92} Regarding the Blanton case, it can perhaps be said that it is common knowledge that sprains and strains typically heal over time. Thus, lack of treatment over an extended period of time can be viewed as evidence that the sprain or strain had healed. Clearly, underBlanton, the commission can take this common knowledge into consideration when it determines the credibility of a medical opinion that seems to contradict the common knowledge regarding sprains and strains.
 {¶ 93} By way of contrast, in the instant case, on April 11, 2002, relator underwent a left L5-S1 laminotomy, discectomy, foraminotomy ostensibly to repair the "mild posterior herniation of the L5-S1 disc" for which the claim is allowed. While relator did return to work on July 22, 2002, at a new job, the post-surgical risks following such surgery is clearly not within the realm of common knowledge or even common sense. The likelihood of developing a recurrent herniation and its causes is clearly not subject to the realm of common knowledge.
 {¶ 94} It is settled law that neither the commission nor its hearing officers have medical expertise. State ex rel. Yellow Freight Sys., Inc.v. Indus. Comm. (1998), 81 Ohio St.3d 56, 58.
 {¶ 95} In the magistrate's view, the SHO abused his discretion when, in his February 18, 2005 order, he determined that a lack of medical treatment for the period July 22, 2002, to January 20, 2003, was evidence that the recurrent herniation as shown on the MRI was not causally connected to the industrial injury. Clearly, the SHO lacks the medical expertise to make such a finding. Clearly, the Blanton case does not support the SHO's finding.
 {¶ 96} Turning to the second issue, Zamora prohibits the commission from relying on a medical report that the commission had earlier found unpersuasive. State ex rel. Jeep Corp. v. Indus. Comm. (1992),64 Ohio St.3d 378.
 {¶ 97} Dr. Bacevich's October 9, 2003 report was implicitly rejected by the commission when it granted the additional claim allowance for "degenerative disc disease L5-S1." Dr. Bacevich had written: "It is my opinion that that degeneration did not occur from that injury."
 {¶ 98} Dr. Bacevich's October 9, 2003 report was implicitly rejected by the commission when it authorized the lumbar fusion surgery that was performed by Dr. Kahn on February 12, 2004.
 {¶ 99} Dr. Bacevich's October 9, 2003 report was also rejected by the commission when it awarded TTD compensation beginning February 4, 2004. The commission explicitly rejected Dr. Bacevich's report in the SHO's order of July 2, 2004, when TTD compensation was awarded.
 {¶ 100} Here, relator argues that the commission has only rejected part of Dr. Bacevich's report and, thus, due to severability, the commission can rely upon Dr. Bacevich's report to support the denial of TTD compensation at issue here. However, relator fails to explain or specify which part of Dr. Bacevich's report has survived the commission's repeated rejections.
 {¶ 101} In short, the commission abused its discretion when it relied upon Dr. Bacevich's report to support the denial of TTD compensation at issue here.
 {¶ 102} Elimination of Dr. Bacevich's report from evidentiary consideration leaves only the reports of Dr. Kahn as evidence that the recurrent disc herniation is causally related to the industrial injury and, thus, produced a period of TTD. The commission has twice reviewed the TTD at issue here, and has twice failed to provide a valid explanation for denial of TTD.
 {¶ 103} It is therefore the magistrate's decision that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio, to vacate the SHO's order of February 18, 2005, and to enter a new order that grants TTD compensation for the period January 20, 2003, through February 3, 2004.
[1] The DHO order of May 19, 2004, contains the following pertinent passage: "The District Hearing Officer finds that the injured worker was unable to return [to work] for the period of 02/04/2004 to 05/19/2004 as a result of the allowed conditions in this claim file."
[2] The SHO order from the July 2, 2004 hearing contains the following language: "The order of the District Hearing Officer, from the hearing dated 05/19/2004, is vacated. The injured worker's C-86 motion filed 02/11/2004 requesting payment of Temporary Total Disability Compensation from 02/04/2004 and continuing is granted." It appears that either the SHO order mistakenly indicated that the DHO order was vacated, or, the SHO vacated the DHO grant of a finite period of TTD from February 4 until May 19, 2004 and then granted the motion anew as a continuing order for TTD. Either way, the ultimate result is that relator was granted TTD beginning on February 4, 2004. If there is a mistake in the wording of the SHO order, that mistake does not affect these appellate proceedings.
[3] This issue was briefed by Coca-Cola in support of its motion to dismiss filed in this action on November 14, 2005. On December 2, 2005, relator filed a written response to the motion. On March 29, 2006, the magistrate issued an order notifying the parties that the magistrate would rule upon Coca-Cola's motion to dismiss at the time he rendered his magistrate's decision.