DECISION
{¶ 1} Relator, Chance A. Bricker ("relator"), commenced this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial *Page 2 
Commission of Ohio ("commission"), to vacate its order denying him wage loss for a period beginning September 14, 2006, and to enter a new order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission did not abuse its discretion and recommended that this court not issue a writ of mandamus. Relator filed an objection to the magistrate's decision, and the commission and respondent, United/Anco Services, Inc. ("United") filed memoranda opposing the objection. This cause is now before the court for a full review.
 {¶ 3} The commission denied relator's application for wage loss because it found Dr. Michael's September 12, 2006 report to be unpersuasive. The commission accorded no credibility to the restrictions set forth in the September 12, 2006 report because, only one month earlier, Dr. Michael had reported that he "plan[ned] on return to work on September 4, 2006 with no restrictions," yet he had not seen relator since, nor did he provide any explanation for his change in opinion as to the need for restrictions.
 {¶ 4} In his single objection, relator argues that the magistrate erred in finding no abuse of discretion in the commission's finding that the September 12, 2006 report was unpersuasive. Relator argues that the commission and the magistrate erred by not viewing the September 12, 2006 report in the context of all of Dr. Michael's reports, in which, according to relator, the doctor repeatedly mentions the need for relator to move from construction to a less physically demanding field. Relator argues that the entire *Page 3 
body of Dr. Michael's records, taken as a whole, explain the doctor's change of opinion from his August 8, 2006 report to his September 12, 2006 report. We disagree.
 {¶ 5} It is true that Dr. Michael's records contain comments such as, "* * * we did talk about a different line of work other than construction * * * [because] there is a good chance [of] * * * possible degeneration down the road[,]"[1] and "I did discuss with him looking a different type of work including a less stressful job physically * * * [because he] will continue to have difficulty with the right knee if he continues working with heavy type construction labor"[2] and "I did tell him that some point in time down the road he is going to more than likely require total joint replacements and as such he is going to try to finish school, get a Bachelor's degree and possibly look at a different type of work or different line of work."[3]
 {¶ 6} However, discussions between Dr. Michael and relator about what will occur "down the road" do not resolve the utter contradiction between Dr. Michael's August 8, 2006 report and his September 12, 2006 report, as to whether relator could return to work with or without restrictions. "The commission, not this court, is the exclusive evaluator of the weight and credibility of the evidence." State ex rel.Pence v. Indus. Comm., Franklin App. No. 04AP-124, 2004-Ohio-7052, ¶ 7, affirmed, 107 Ohio St.3d 286, 2005-Ohio-6507, 839 N.E.2d 14, citingState ex rel. LTV Steel Co. v. Indus. Comm., 88 Ohio St.3d 284, 287,2000-Ohio-328, 725 N.E.2d 639. By his objection, relator asks this court to reevaluate the credibility of the evidence, which we cannot do. The commission's rejection of Dr. Michael's September 12, 2006 report, and consequent *Page 4 
denial of wage loss compensation, were not an abuse of discretion. Accordingly, relator's objection is overruled.
 {¶ 7} Having undertaken a review of relator's objection, considered the arguments of the parties, and independently appraised the evidence, we overrule relator's objection, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained therein, and we deny the requested writ of mandamus.
Objection overruled; writ of mandamus denied.
 KLATT and FRENCH, JJ., concur. *Page 5 APPENDIX A MAGISTRATE'S DECISION IN MANDAMUS {¶ 8} In this original action, relator, Chance A. Bricker, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying him R.C. 4123.56(B) wage loss compensation beginning September 14, 2006, and to enter an order granting said compensation. *Page 6 
 Findings of Fact
 {¶ 9} 1. On March 11, 2004, relator sustained an industrial injury while employed as a journeyman carpenter for respondent United/Anco Services, Inc.("employer"), a state-fund employer. The claim is allowed for:
 Sprain of knee leg, right; tear medial meniscus, right knee; torn lateral meniscus, right knee; right venous thrombosis; adjustment disorder with depressed mood.
The claim is assigned claim number 04-813987.
 {¶ 10} 2. On August 8, 2006, relator visited his treating physician, Alexander Michael, III, M.D., who wrote:
 * * * Patient presents for Workers Comp follow up right knee.
 * * * Date of Accident/Injury: 3-11-04[.] Patient is currently full weightbearing. Aggravated by lying down, requesting some kind of night time stabilizer. Alleviated by acupuncture, patient states he is 3 weeks into a fairly lengthy program with Dr. Chen. Patient is employed at L M[.] Currently not working. The patient's current work slip expires on 8-14-06[.]
 {¶ 11} 3. On August 20, 2006, relator again visited Dr. Michael, who wrote:
 The patient is in for follow-up review of his right knee. He continues to have swelling in the anterior lateral aspect of the right knee with tenderness. He still has occasional giving way but it is definitely improving from the last visit. His treatment with Dr. Chen was delayed for a few weeks, secondary to approval from Workers' Compensation. He is now starting his treatment modalities with him and it is definitely helping.
 At his point in time, his work slip expires on 8/14. We are going to extend that for four weeks and plan on return to work on September 4, 2006 with no restrictions. * * *
 {¶ 12} 4. By letter to relator's counsel dated September 6, 2006, Dr. Michael wrote: *Page 7 
 Mr. Bricker was last seen on 8/8/06. He stated he was doing fairly well with his right knee with the treatment by Dr. Chen. He continued to have a little swelling along the lateral aspect of the knee with some tenderness. He said he has occasional "giving way", but it is definitely improved from the last visit. He said that some of the treatments by Dr. Chen were delayed for two weeks secondary to approval from Worker's Compensation. At that point in time his work slip expired on 8/14/06, so we are going to extend that for four weeks and then plan return to work on 9/4/06 with no restrictions. We plan on follow-up on a p.r.n. basis after that.
 SUMMARY: It is my medical opinion that within reasonable medical certainty Mr. Bricker's injuries to the left and right knees were the proximate cause of his Worker's Compensation injury at work on 3/11/04. The diagnoses consistent with that injury on the left side was contusion infrapatellar and anterior portion of the left knee and a contusion in the anterior portion of the right knee with a torn medial and lateral meniscus. This subsequently required surgical intervention on the right side. It also required several various treatment sessions including conservative treatment, injections, physical therapy and even acupuncture to try to keep him working with the right knee problem. I did discuss with him looking at a different type of work including a less stressful job physically, and he is looking at possibly going into teaching at this point in time. Mr. Bricker will continue to have difficulty with the right knee if he continues working with heavy type construction labor with climbing, walking in mud with boots, and heavy lifting, pushing, pulling associated with construction work. He understands this and has tried to return to work and once again is looking into a different type of employment to see if we can keep him comfortable with the right knee difficulty.
 {¶ 13} 5. On September 14, 2006, relator filed an application for R.C.4123.56(B) wage loss compensation on form C-140. The backside of the form contains a "medical report" requesting information from the treating physician. Dr. Michael completed the form on September 12, 2006. The form asks the treating physician to identify physical restrictions caused by the industrial injury. Dr. Michael indicated by checkmark that *Page 8 
during an eight-hour day, relator can walk only one hour, stand four hours, and sit eight hours. Dr. Michael restricted lifting to less than 51 pounds. Relator can occasionally lift from 26 to 50 pounds. Dr. Michael further indicated that relator can never squat or crawl and he can climb only occasionally.
 {¶ 14} 6. Following a November 21, 2006 hearing, a district hearing officer ("DHO") issued an order awarding wage loss compensation. The DHO's order explains:
 It is the order of the District Hearing Officer that the request for working wage loss compensation beginning with the pay period ending 09/16/2006 is granted as the Claimant has met his burden of proving compliance with the wage loss rules and regulations.
 The District Hearing Officer finds that the Claimant has returned to work at a position other than his former position of employment. The Claimant's former position of employment was as a journeyman/carpenter in the construction field. The District Hearing Officer finds that the Claimant's new position is teaching the construction trade to youths.
 The District Hearing Officer finds that as a result of the allowed conditions in this claim, the Claimant has suffered a wage loss. The District Hearing Officer notes the employer's concern that the Claimant was released to return to work without restrictions 05/30/2005 and in fact did return to work in the former position of employment. However, the Claimant testified as to continuing problems and the 09/06/2006 report of Dr. Michael substantiates that he advised the Claimant to find a new line of work. In addition, Dr. Michael placed restrictions on the Claimant pursuant to the C-140 completed 09/12/2006.
 This order is based upon the 09/06/2006 report of Dr. Michael, the C-140 report of Dr. Michael, the Claimant's pay stubs on file, the Claimant's testimony regarding his former position of employment and his new position, and the Claimant's testimony regarding the potential for advancement and raises in his new position. *Page 9 
 The District Hearing Officer finds that there is no contrary medical evidence which establishes that the Claimant currently is capable of working his former position of employment.
 {¶ 15} 7. The employer administratively appealed the DHO's order of November 21, 2006.Following a February 27, 2007 hearing, a staff hearing officer ("SHO") issued an order vacating the DHO's order. The SHO's order explains:
 It is the order of the Staff Hearing Officer that the C-140, filed 09/14/2006, is denied.
 The claimant's representative clarified at the District Hearing Officer's hearing that working wage loss compensation is requested beginning with the pay period ending 09/14/2006.
 The 08/08/2006 office note of Dr. Michael indicates that the claimant's "work slip" was extended for four weeks, where upon the claimant would be released to return to work without restrictions on 09/04/2006. On 09/06/2006, Dr. Michael issued a narrative report which consists largely of restatements of office notes from 2004 through 2006. However, at the end of that report Dr. Michael states "I did discuss with him looking at a different type of work including a less stressful job physically, and he is looking at possibly going into teaching at this point in time." Dr. Michael further states that the claimant "has tried to return to work and once again is looking into a different type of employment to see if we can keep him comfortable with the right knee difficulty." There is no evidence that the claimant returned to work with this employer after his release on 09/04/2006 or that Dr. Michael saw the claimant between 08/08/2006 and 09/06/2006.
 In addition, Dr. Michael completed a C-140 report on 09/12/2006 which describes a number of limitations regarding the claimant's physical activities. Again, there is no evidence that Dr. Michael saw the claimant between 08/08/2006 and 09/12/2006.
 The Hearing Officer finds the medical evidence upon which the claimant relies to be unpersuasive. Specifically, the *Page 10 
08/08/2006 office note Dr. Michael indicates that the claimant was to be released to return to work without restrictions on 09/04/2006. His subsequent statements regarding physical restrictions and his need to locate new employment are not consistent with his release of the claimant to full duty on 09/04/2006. No explanation has been offered from Dr. Michael regarding why restrictions were placed subsequent to the 08/08/2006 office note. Absent such an explanation, the Hearing Officer finds Dr. Michael's restrictions to be unpersuasive.
 Therefore, it is the order of the Staff Hearing Officer that working wage loss compensation is denied from the pay period ending 09/14/2006 through 12/23/2006.
 {¶ 16} 8. Relator administratively appealed the SHO's order of February 27, 2007.In support of the appeal, relator's counsel submitted a memorandum dated March 8, 2007.Attached to the memorandum was a letter to Dr. Michael dated December 17, 2004 from the regional office manager of the Ohio and Vicinity Regional Council of Carpenters, stating:
 I am writing you on behalf of Mr. Chance Bricker, a member of Carpenters Local 69, Canton, Ohio. It is my understanding that you have released Mr. Bricker for "light duty" employment with restrictions on standing for more than two (2) hours and no bending, squatting or kneeling.
 Please be advised, that I know of no job that Mr. Bricker could perform as a journeyman carpenter that would meet these restrictions. Therefore, it would be almost impossible for us to send Mr. Bricker to work for our employers until he is released for full duty work.
 {¶ 17} 9. In the memorandum in support of the appeal, relator's counsel wrote:
 It is also important to note that claimant had no option, prior to his teaching position, other than returning to full duty work. I have enclosed a letter from his union hall indicating that there is no light duty work available. Accordingly, unless Mr. Bricker was to find a more light duty position consistent with his doctor's recommendation, he was forced to return to full *Page 11 
duty work and repeat a pattern where he would work, his knee would flare up, and he would have to take time off of work. This is exactly what happened just prior to his assumption of the teaching position. In other words, to follow the Staff Hearing Officer's logic, claimant would be forced to ignore his doctor's instructions and continue to have his doctor to release him to full duty work in order to support himself. * * *
 {¶ 18} 10. On March 13, 2007, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of February 27, 2007.
 {¶ 19} 11. On April 16, 2007, relator, Chance A. Bricker, filed this mandamus action.
Conclusions of Law:
 {¶ 20} In support of his wage loss application, relator submitted Dr. Michael's medical report completed September 12, 2006. Presumably, the report presents physical restrictions which, if found credible, prevent a return to the former position of employment and would thus support the wage loss application.
 {¶ 21} The commission, through its SHO, rejected Dr. Michael's September 12, 2006 report as being unpersuasive. While there was no medical evidence to directly contradict Dr. Michael's September 12, 2006 restrictions, the commission, nevertheless, denied the wage loss application on grounds that relator's medical evidence was unpersuasive.
 {¶ 22} The issue here is whether the commission abused its discretion in finding relator's medical evidence unpersuasive and, more particularly, whether the commission, through its SHO, articulated a reasonable basis for finding the evidence unpersuasive. *Page 12 
 {¶ 23} Finding no abuse of discretion, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 24} A medical inability to secure comparably paying work is a prerequisite to obtaining wage loss compensation. State ex rel. Chora v.Indus. Comm. (1996), 74 Ohio St.3d 238, 241. Because a claimant's former position of employment is obviously comparably paying work, a full release to return to the former position of employment negates any assertion that the claimant's inability to earn at the pre-injury rate is medically precipitated. Id.
 {¶ 25} The evaluation of the weight and credibility of the evidence before it rests exclusively with the commission. State ex rel. Thomas v.Indus. Comm. (1989), 42 Ohio St.3d 31, 33, citing State ex rel. Burleyv. Coil Packing, Inc. (1987), 31 Ohio St.3d 18. Deficiencies in the medical evidence submitted by a claimant in support of his application for compensation can constitute some evidence supporting the commission's conclusion that the application is unsupported by credible medical evidence. Id. This is so because the claimant has the burden to persuade the commission that there is a proximate causal relationship between the industrial injury and his claimed disability and to produce medical evidence to this fact. State ex rel. Quarto Mining Co. v.Foreman (1997), 79 Ohio St.3d 78, 83.
 {¶ 26} Where a key question is left unanswered, the commission is entitled to conclude that the medical report's persuasiveness is either diminished or negated. State ex rel. Pavis v. Gen. Motors Corp., B.O.C.Group (1992), 65 Ohio St.3d 30, 33.
 {¶ 27} Here, in support of his wage loss application, relator submitted Dr. Michael's September 12, 2006 medical report showing restrictions that would *Page 13 
presumably prevent a return to the former position of employment. It was relator's burden to submit medical evidence of his alleged inability to return to his former position of employment. Chora.
 {¶ 28} In evaluating the weight and credibility of Dr. Michael's September 12, 2006 medical report, the commission, through its SHO, observed that Dr. Michael had released relator to return to work on September 4, 2006 with no restrictions, but, then, on September 12, 2006, issued restrictions without further examination or even an explanation as to why relator's medical status had changed.
 {¶ 29} It was well within the commission's fact-finding discretion to view the unanswered question as to relator's change in medical status as the basis for finding Dr. Michael's September 12, 2006 medical report to be unpersuasive. Thus, the commission did not abuse its discretion in denying relator's application for wage loss compensation.
 {¶ 30} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
[1] Stip. Rec. 26-27(Sept. 6, 2006 letter to Allen Schulman, Jr., 3-4).
[2] Stip. Rec. 28 (Sept. 6, 2006 letter to Allen Schulman, Jr., 5).
[3] Stip. Rec. 37 (May 17, 2005 office note). *Page 1